BORGMAN v. BULTEMA.

1. RELIGIOUS SOCIETIES—CHURCH PROPERTY TO BE RETAINED FOR BENEFIT OF CHURCH.

Where property is dedicated to the use of a religious denomination it cannot thereafter be diverted to the use of those who depart from that faith, but must remain for the use and benefit of those who still adhere to the faith, though they be a minority.

2. SAME—CHRISTIAN REFORMED CHURCH—FORM OF CHURCH GOVERNMENT.

Under the 86 articles of the Church Order of the Christian Reformed Church, which is its supreme law or constitution, its form of government is presbyterial rather than congregational, and the supreme governing body is the synod, which has sole and exclusive power to make and

establish all laws and regulations for the government of the church, has supreme ecclesiastical power over all who adhere to its confession of faith, and is the only body which can say what the confession of faith of the church is or shall be.

3. SAME—SYNOD THE SUPREME BODY—DEPOSING A MINISTER.

The synod, being the proper body to hear, try, and determine whether a certain book of defendant minister of the local church at Muskegon is in conflict with the confession of faith of the church, its decision in the matter is final and binding upon the courts.

4. SAME.

Where defendant minister refused to retract the writing in said book after the same had been determined by the synod to be in conflict with the confession of faith, he subjected himself to be deposed by the classis, under Article 53 of the Church Order.

5. SAME—CHURCH TRIAL—DEPOSED MINISTER AND CONSISTORY NOT ENTITLED TO CONTROL CHURCH PROPERTY.

*Held,* that defendant minister and the deacons and elders, constituting the consistory of the local church at Muskegon, have been properly and legally removed from their respective offices by the duly constituted authorities of the church, and consequently are no longer entitled to hold, manage, and control the property of the church.

6. SAME—CHURCH TRIAL—REVIEW BY COURTS.

Where it is admitted that property belongs to a particular church, and the only question is whether the defendant, claiming to be pastor, should be excluded from its use, the court will only consider whether the church has ordered his exclusion, not whether it was right in doing so.

7. SAME—ATTEMPT OF LOCAL CHURCH TO CHANGE FORM OF GOVERNMENT VOID.

An attempted amendment of its articles of association by the local church at Muskegon, incorporated under Act No. 148, Pub. Acts 1901, providing for the incorporation of Christian Reformed Churches of America, so as to give the congregation the right to determine whether it had departed from the established standards of doctrine of the church, with the right of the majority to control the local church property, is void as an effort to substitute the congregational for the presbyterial form of government.

Appeal from Muskegon; White (Charles E.), J., presiding. Submitted January 20, 1921. (Docket No. 73.) Decided March 30, 1921.

Bill by William Borgman and others against Harry Bultema and others for an injunction. Affirmed.

*Harris E. Galpin* and *Joseph T. Riley,* for plaintiffs.

*Stephen H. Clink* (*Edward C. Farmer,* of counsel), for defendants.

CLARK, J. The opinion of the trial judge is sustained by the record and by the law. It is well written. To dispose of this case we shall quote from it at length:

"Both the plaintiffs and the defendants claim to be members of a religious denomination known as the Christian Reformed Church. This religious denomination has been organized in this country since the year 1857. The First Christian Reformed Church of Muskegon is a branch or local church of this religious denomination, and is incorporated under the provisions of Act No. 148 of the Public Acts of the State of Michigan of 1901.

"The defendant, Harry Bultema, for a number of years last past, has been the regular and duly constituted minister of said First Church of Muskegon. The other defendants, excepting the four who have filed a disclaimer, claim to be the elders and deacons of said First Church, which elders and deacons under the church law constitutes the local governing body of the church, known as the consistory.

"Some of the plaintiffs are members of said First Church, others claim to be the duly constituted and legal consistory of said church, and others join as plaintiffs as the representatives of the classis, which,

under the church law, is claimed to be the governing body of the church next over the consistory.

"Under the church law of this denomination the office bearers of the local church are the elders and deacons elected by the local congregation, and together called the consistory, and the minister. The governing body of the church next over the consistory is known as the classis, which is made up of delegates sent from the local churches in a certain neighborhood or territory. The supreme governing body of the church is known as the synod, which body is made up by delegates sent from the several classes. The classis is supposed to hold a meeting three times a year, while the synod meets every two years.

"It is the claim of the plaintiffs that the defendants have been duly and legally removed from their offices of minister, deacons and elders of said First Church in accordance with the established law and usages of the Christian Reformed Church, and that consequently they have no further right to control the property of said First Church or to exercise the privileges and functions of their respective offices.

"The defendants insist that they have never been legally deposed from their respective offices, and consequently they have the legal right, as the local governing body of said First Church, and as its minister, to control the property of said church, to con-

---

CHURCH ORDER OF THE CHRISTIAN REFORMED CHURCH.

Article 1.

For the maintenance of good order in the Church of Christ it is necessary that there should be: offices, assemblies, supervision of doctrine, sacraments and ceremonies, and Christian discipline, of which matters the following articles treat in due order.

Article 2.

Of the Offices.

The offices of four kinds: of the ministers of the word, of the doctors, of the elders, and of the deacons.

Article 3.

No one, though he be a doctor, elder or deacon, shall be per-

duct public worship therein, and to perform the
duties of their respective offices.

"The First Christian Reformed Church of Muske-
gon are the owners of the church property, where
the regular services of those affiliated with said
church are held and conducted, and also of the house
or manse where the minister of said church lives.
The legal description of said real estate is admitted
to be correctly set forth in the bill of complaint, and
said real estate is worth in the neighborhood of
thirty thousand dollars ($30,000).

"This bill is filed to restrain the defendants from
acting, or claiming to act, as the minister and con-
sistory of said First Church, and from holding, man-
aging and controlling the said real estate as such
minister and consistory, or from performing the
duties of their respective offices, on the theory that
they have been duly and legally removed from their
respective offices, and consequently have no lawful
right to further act in that respect.

"As I view the case the result of this controversy
turns on the question of whether or not defendants
have been properly deposed from their offices in ac-
cordance with the laws and usages of said Christian
Reformed Church, and whether or not the defend-
ants, by their acts and doings since this controversy
arose, have in legal effect removed themselves from
this religious denomination and consequently now
have no legal right to claim to be acting as the

mitted to enter upon the ministry of the word and the sacraments
without having been lawfully called thereunto. And when any-
one acts contrary thereto, and after being frequently admonished
does not desist, the classis shall judge whether he is to be de-
clared a schismatic or is to be punished in some other way.

Article 4.

The lawful calling of those who have not been previously in
office, consists:

*First*, in the election which, after preceding prayers, shall
take place by the consistory and the deacons with due observance
of the regulation established by the consistory for this purpose,
and of the ecclesiastical ordinance, that only those can for the

minister and officers of a local church belonging to the denomination.

"If either of these questions shall be answered in the affirmative the plaintiffs are clearly entitled to the relief prayed for.

"The property belonging to the First Church of Muskegon has been donated by various parties believing in and affiliated with this religious denomination, and has been solemnly dedicated to the use of this religious denomination.

"Under well-established rules of law, acquiesced in by all our courts, and which, as I understand it, no one disputes, where property is dedicated to the use of a religious denomination it cannot thereafter be diverted to the use of those who depart from that faith, but must remain for the use and benefit of those who still adhere to the faith. It is conceded that the property in question in this case has been dedicated to the use of those who adhere to the faith of the Christian Reformed Church, and that it must there remain, and should it appear that any have departed from that faith they cannot claim the right to take the property with them.

"The supreme governing body of the First Reformed Church is the synod. This supreme body has sole and exclusive power to make and establish all laws and regulations for the government of the

first time be called to the ministry of the word who have been declared eligible by the churches, according to the rule in this matter; and furthermore with the advice of classis or of the counselor appointed for this purpose by the classis.

*Secondly*, in the examination both of doctrine and life which shall be conducted by the classis, to which the call must be submitted for approval, and which shall take place in the presence of three deputies of synod, from the nearest classis.

*Thirdly*, in the approbation by the members of the calling church, when, the name of the minister having been announced for two successive Sundays, no lawful objection arises; which approbation, however, is not required in case the election takes place with the co-operation of the congregation by choosing out of a nomination previously made.

church. It has supreme ecclesiastical power over all those who adhere to that confession of faith. It is the only body in the church which can say what the confession of faith is or shall be.

"It is the contention of the plaintiffs that the form of government of the Christian Reformed Church is what is known as the presbyterial form of government, as contradistinguished from congregational form of government.

"The defendants, on the other hand, contend that the real form of government of this denomination is a mere federation of churches, that the real governing body is the consistory of each church, and that the classis and synod have no real power or authority over the consistory which can be enforced. As I understand defendants' theory it is that the classis and synod may act in an advisory capacity to the consistory, but that in case their advice is disregarded they are powerless, to enforce their authority over the local church.

"I cannot agree with defendants' contention in this regard. I do not see how any one could read the 86 articles of the church order of the Christian Reformed Church, which is the supreme law or constitution of the church, without coming to the conclusion that this religious denomination is much

Finally, in the public ordination in the presence of the congregation, which shall take place with appropriate stipulations and interrogations, admonitions and prayers and imposition of hands by the officiating minister (and of the other ministers who are present), agreeably to the form for that purpose.

Article 5.

Ministers already in the ministry of the word, who are called to another congregation, shall likewise be called in the aforesaid manner by the consistory and the deacons, with observance of the regulations made for the purpose by the consistory and of the general ecclesiastical ordinances for the eligibility of those who have served outside of the Christian Reformed Church and for the repeated calling of the same minister during the same vacancy; further, with the advice of the classis or of the counselor, appointed by the classis, and with approval of the classis

more than a federation of churches. In fact, the 86th article explicitly says that these articles are the supreme law of the church, and that no congregation or classis is at liberty to alter, augment, or diminish them, and that they shall be observed as such until otherwise ordained by the synod. All the officers of the church are created, fixed and determined by this constitution; their duties are set forth and defined therein, and their terms, office and manner of election are created thereby. There could be no such thing as a local church or a consistory of the ministers or a classis without this constitution. The minister of the local church can only be called and installed and hold his office in the manner provided by this constitution. This is equally true of the consistory. These articles provide that no minister or consistory can be installed without subscribing to the formula of subscription established by the church, and that in case they obstinately persist in refusing to subscribe to such formula they shall be deposed from their office. We cannot conceive of a form of church government more presbyterial in its nature than the one defined and set forth in these 86 articles. It seems to us that our Supreme Court has in effect recognized this form of government as being of a presbyterial nature in the case of *Bear* v. *Heasley*, 98 Mich. 279 (24 L. R. A. 615,), and cases there cited.

---

or of the deputies appointed by the classis, to whom the ministers called shall show good ecclesiastical credentials of doctrine and life, with the approval of the members of the calling congregation, as stated in article 4; whereupon the minister called shall be installed with appropriate stipulations and prayers agreeably to the form for this purpose.

Article 10.

A minister, once lawfully called, may not leave the congregation with which he is connected, to accept a call elsewhere, without the consent of the consistory, together with the deacons, and knowledge on the part of the classis; likewise no other church may receive him until he has presented a proper certificate of dismission from the church and the classis where he served.

"In 1917, the defendant Bultema wrote and published a book known as 'Maranatha,' which book set forth the author's idea of certain principles which it was claimed were in accordance with the Holy Scriptures. This book was given quite wide circulation, and claimed the attention of various leaders in the Christian Reformed Church, and also of some of the local churches and some classes. The synod of the church met in regular meeting in 1918. It is the custom of the church, and in accordance with its fixed practice, that those who desire to bring matters before the synod shall prepare before the meeting some notice or memorandum of such matters and send the same to the stated clerk of the synod, who publishes a booklet called the Agendum, setting forth all of such matters that are to come before the synod, which booklet is thereupon mailed to all churches and consistories of the denomination, so that they may have ample notice of all matters coming before the synod before it meets. Several classes, prior to the meeting of synod in 1918, adopted resolutions requesting the synod of 1918 to take action on the book Maranatha and to determine whether the writings of the defendant Bultema therein contained were in conflict with the confession of faith of the church. Notice of these resolutions were duly published in the Agendum, a copy of which

Article 11.

On the other hand, the consistory, as representing the congregation, shall also be bound to provide for the proper support of its ministers, and shall not dismiss them from service without the knowledge and approbation of the classis and of the deputies of the (particular) synod.

Article 29.

Of the Ecclesiastical Assemblies.

Four kinds of ecclesiastical assemblies shall be maintained: the consistory, the classis (the particular synod), and the general synod.

Article 30.

In these assemblies ecclesiastical matters only shall be transacted and that in an ecclesiastical manner. In larger assemblies

came to the hands of defendant Bultema prior to the meeting of synod in 1918.

"At the meeting of synod in 1918, held at Grand Rapids, Michigan, this matter came before the synod. Defendant Bultema was present at this meeting, and was given ample opportunity to defend his book. The synod, after hearing the matter, determined that the teachings in this book were in conflict with the confession of faith of the church.

"From what I heretofore said it is clear that I am of the opinion that the synod, under the established law of the church, has full authority to hear, try and determine this matter. It was determined adversely to the defendant, and in my judgment the determination of the synod in this matter is final. The synod is the supreme ecclesiastical body in the church; it has sole power to determine what the confession of faith of the church shall be. Article 30 of the church order provides that in the larger assemblies only such matters shall be dealt with as could not be finished in the smaller assemblies, or such as pertained to the churches of the larger assembly in common. Here was a book published at large throughout the church, which it was claimed was in conflict with the confession of faith of the church. The synod was the proper body to hear, try and determine this matter. I am aware that it is claimed by the defendant that he was not given proper opportunity to defend his book, for the reason that the synod denied him the right to prove

---

only such matters shall be dealt with as could not be finished in smaller assemblies, or such as pertain to the churches of the larger assembly in common.

Article 31.

If anyone complain that he has been wronged by the decision of a smaller body, he shall have the right to appeal to a larger ecclesiastical assembly, and whatever may be agreed upon by a majority vote shall be considered settled and binding, unless it be proved to conflict with the Word of God or with the articles of the church order, as long as they are not changed by a general synod.

by the Holy Scriptures that the book was not in con-- flict with the confession of faith. The synod, how-- ever, was the proper and only body to determine that question. It was for the synod to construe the meaning of the confession of faith, and to determine; whether or not any writing of the defendant was in conflict therewith, and its decision in the matter is final. And this court is bound to respect such decision.

"The synod, however, decided that although it had full power and authority to determine the question of whether or not the book Maranatha was in conflict with the confession of faith, it had no original jurisdiction to remove the defendant Bul-- tema as minister of said First Church, and it there-- fore appointed a committee of three to apply to the consistory of said First Church and to urge upon the consistory the taking up of the matter with its pastor. This, as I understand, was a proceeding in full accord with the law, practices and usages of the church.

"Sometime after the meeting of the synod the com-- mittee of the synod duly appointed for that purpose called upon the minister and consistory of the First Church of Muskegon for the purpose of carrying out the instructions received from synod. After the committee had conferred with the minister and con-- sistory they were informed by the consistory that they would take the matter under consideration and

---

Article 33.

Those who are delegated to the assemblies shall bring with them their credentials and instructions, signed by those sending them, and they shall have a vote in all matters, except such as, particularly concern their persons or churches.

Article 36.

The classis has the same jurisdiction over the consistory as the particular synod has over the classis and the general synod over the particular.

Article 37.

In all churches there shall be a consistory composed of the ministers of the word and the elders, who at least in larger

report their conclusions later. The minister, the defendant Bultema, refused to recede from his position, still insisting that the book Maranatha was not in conflict with the confession of faith, and the consistory concluded to stand with him. Their action in the matter was duly reported. The minister refused to abide by and acquiesce in the decision of the synod, and the consistory upheld him in his stand and refused to depose him.

"Under the church law, before the minister, the elders and the deacons could be inducted into office, it was necessary for them to subscribe to the confession of faith of the church. Each of the defendants in this case have signed the formula of subscription set forth in plaintiff's exhibit No. 1. Article 53 of the church order provides that should the minister obstinately persist in refusing to subscribe to the confession of faith of the church, he may be deposed from his office by the classis. It seems to me that the defendant Bultema, by refusing to retract his writing, as contained in Maranatha, after the same had been determined by the synod to be in conflict with the confession of faith, subjected himself to be deposed by the classis under this article.

"The First Church of Muskegon is under the jurisdiction of the classis known as Classis Muskegon. The Classis Muskegon held a meeting November 12th and 13th, 1918. At this meeting of classis the

congregations, shall, as a rule, meet once a week. The minister of the word (or the ministers, if there be more than one, in turn), shall preside and regulate the proceedings.

Wherever the number of elders is small, the deacons may be added to the consistory by local regulation; this shall invariably be the rule where the number is less than three.

Article 38.

In places where the consistory is to be constituted for the first time or anew, this shall not take place' except with the advice of the classis.

Article 41.

The classical meetings shall consist of neighboring churches

matter of the book Maranatha and defendant Bultema's refusal to retract, and also the refusal of the consistory to depose the defendant Bultema from his ministerial office, came up for consideration. At this meeting a classical committee was appointed to urge upon the consistory the necessity of persuading its minister to retract unconditionally. This committee made a report to classis at its meeting held April 15, 1919. The report practically stated that they had met with the minister and consistory of Muskegon No. 1, and that the minister had retracted. The report of the committee was accepted. It appears, however, that the defendant Bultema was present in person at this meeting of classis, and declared upon the floor of classis that he had retracted nothing. The classis thereupon appointed another committee to give advice in the matter. This committee brought in a report recommending that the defendant Bultema be given another opportunity to declare before classis whether or not he was willing to retract unconditionally, and that in case he was not, he be given an opportunity to convince classis that his doctrines were in conformity with the confession. This report was adopted. The defendant Bultema was thereupon asked the question of whether or not he would retract, and he replied 'No.' The classis then gave him a full opportunity to defend his doctrines and to convince them that they were in accordance with the confession of faith. Defendant Bultema failed to convince the classis,

that respectively delegate with proper credentials a minister and an elder to meet at such time and place as was determined by the previous classical meeting. Such meetings shall be held at least once in three months, unless great distances render this inadvisable. In these meetings the ministers shall preside in rotation, or one shall be chosen to preside; however, the same minister shall not be chosen twice in succession.

Furthermore, the president shall, among other things, ask every one whether they hold in their churches their consistory meeting; whether church discipline is exercised; whether the poor and the Christian schools are cared for; finally, whether

and it was decided that he was in error, and that his teachings were in conflict with the confession of faith. The classis thereupon instructed Consistory Muskegon No. 1 to depose its minister in accordance with article 80 of the church order.

"Notice of this action of the classis was duly given to the consistory.

"The next meeting of the classis was held August 5 and 6, 1919, at which meeting the consistory of the First Church of Muskegon notified the classis that on account of conscientious scruples it could not comply with the order of classis made at its meeting held on April 15th. At this meeting of classis there was also filed with classis protests or appeals by several members of the First Church of Muskegon from the action of the consistory of the First Church of Muskegon in refusing to depose defendant Bultema from his office as minister, in accordance with direction of synod, and classis. The filing of these protests or appeals seems to have been in accordance with the practices and usages of the church in such matters. The defendant Bultema was present in person at this meeting. After duly considering the matter, the classis decided to remain by its decision and to require the consistory to comply therewith; to appoint a committee to persuade the consistory to do so, and in case consistory refused, classis will be compelled to take action. The committee was accordingly appointed. The next meeting of classis was held November 11 and 12, 1919.

there be anything wherein they need the counsel and the help of the classis for the proper institution of their church.

And, finally, at the last meeting but one and, if necessary, at the last meeting before the (particular) synod, delegates shall be chosen to attend said synod.

### Article 44.

The classis shall authorize at least two of her oldest, most experienced and competent ministers to visit all the churches once a year and to take heed whether the minister and the consistory faithfully perform the duties of their office, adhere to sound doctrine, observe in all things the adopted order, and

The committee appointed at former classis made a report, by which it was attempted to reconcile the position of defendant Bultema with the confession of faith. This report was rejected, and there was substituted in its place article 20 of the minutes of classis held April 15, 1919, which contained the final action of classis at that meeting in the matter. Defendant Bultema was also present in person at this meeting. The classis thereupon decided to give the defendant another opportunity to retract, and in case of his refusal, to require the consistory to suspend him within three weeks' time. That in case the consistory refused to comply then to maintain the decision of the classis by the appointment of a committee of four ministers and five elders for the purpose of suspending the pastor and consistory, and in a legal manner to call a congregational meeting to elect a new consistory.

"Another meeting of the classis was held on December 16, 1919. The committee appointed at the former meeting made a report to the effect that the consistory declined to obey the directions of the classis, but they hesitated to proceed further, for the reason that the former classis had instructed them to suspend and not to depose. Defendant Bultema was present at this meeting. After duly considering the matter, the classis decided to finally depose the pastor and consistory on the grounds set forth in the meeting of November 12th. The existing com-

---

properly promote as much as lies in them, through word and deed, the upbuilding of the congregation, in particular of the youth, to the end and that they may in time fraternally admonish those who have in anything been negligent, and may by their advice and assistance help direct all things unto peace, upbuilding, and greatest profit of the churches. And each classis may continue these visitors in service as long as it sees fit, except where the visitors themselves request to be released for reasons of which the classis shall judge.

Article 50.

The general synod shall ordinarily meet once every two years unless there be urgent need to shorten the time.

mittee were thereupon instructed to execute the decision of classis in the matter of the selection of a new consistory, and in the meantime to perform the duties of consistory of the First Church of Muskegon. This action was taken with the advice and consent of the deputies from synod who were present. Notice of this action was duly given in writing to the defendants, but they persisted in holding their respective offices, managing and controlling the property of the church, and holding the regular religious services of the congregation.

"The committee appointed by classis thereafter duly presented themselves at the church and requested from defendants the possession of the property and the right to conduct the affairs of the church as the acting consistory thereof. The defendants refused to comply with this request, and have ever since claimed to be acting as the regular and legal minister and consistory of said First Church. The congregation itself is divided, although the majority thereof adheres to the stand taken by the defendants. Since the demand of the committee was made on the defendants those of the congregation who have adhered to the stand taken by the classis have held their religious services in a neighboring church of the same denomination, although as a separate organization. They have proceeded to elect from among their number, in accordance with the church regulations, a new consistory, which new

To this synod three ministers and three elders out of every classis shall be delegated. If it become necessary in the opinion of at least three classes to call a meeting of synod within two years, the local church designated for this purpose shall determine time and place.

Article 53.
Of Doctrine, Sacraments and Other Ceremonies.
The ministers of the Word of God and likewise the professors of theology (which also behooves the other professors and school teachers), shall subscribe to the three forms of unity, namely: the Belgic confession of faith, the Heidelberg catechism, and the canons of Dordrecht, 1618-19, and the ministers of the word who

consistory have been made parties plaintiff in this case.

"Defendants' counsel strenuously insist that the defendants have not been legally removed from their respective offices, for the reason that the classis, under the church law, has no original jurisdiction to determine the matter in controversy, that action to remove the pastor can only be taken by the consistory in the first instance, and that if the classis have any jurisdiction in the matter whatever it is only upon appeal.

"We think that both of these contentions must be determined against the defendants. As I now view it, under the facts developed here, the classis had original jurisdiction to proceed in this matter, and no appeal having been taken therefrom, its action is final. But, conceding that the classis has only appellate jurisdiction, the consistory was first appealed to through the synodical committee and also by several members of the congregation, and having refused to take any action, an appeal therefore was duly taken to the classis, which appeal came up for consideration at the August, 1919, meeting of classis. The evidence discloses that these appeals or protests were taken in accordance with the usual practices and usages of the church in such matters.

"Defendants also strenuously insist that even conceding that the classis had jurisdiction to hear, try and determine the matter in controversy, still defendants have had no such trial as is recognized by the courts. It is insisted that the defendants

refuse to do so shall *de facto* be suspended from their office by the consistory or classis until they shall have given a full statement, and if they obstinately persist in refusing, they shall be deposed from their office.

Article 54.

Likewise the elders and deacons shall subscribe to the aforesaid forms of unity.

Article 79.

When ministers of the divine word, elders or deacons, have committed any public, gross sin, which is a disgrace to the

should have been informed in some formal legal manner of the charges preferred against them, and notice given, and a full opportunity offered to defend against the charges.

"Speaking generally, it is true that before defendants can be removed from their offices they must be informed of the nature of the charges pending against them, and they must be given an opportunity to defend themselves before the tribunal provided by the church law to hear, try and determine such matters. But it will not do to say that church tribunals are required to conform to all the formal rules applicable to courts of public justice. We do not see how it can be consistently argued that defendant Bultema, or the consistory, have not been fully and fairly informed of the charges against them. None of the defendants made any claim before the church tribunals that they did not know the specific nature of the charge. The question seems to have been raised here for the first time. The records of the several meetings of the classis show that the defendant Bultema was present on each occasion and took part in the discussion. Inasmuch as he was present and took part, the defense of no notice cannot be raised now, and the proceedings clearly indicate that he was at all times fully aware, as was the consistory, of the nature of the charges, although probably the same had not been preferred in a formal, legal manner.

"Under these circumstances we feel that the de-

church, or worthy of punishment by the authorities, the elders and deacons shall immediately by preceding sentence of the consistory thereof and of the nearest church, be suspended or expelled from their office, but the ministers shall only be suspended. Whether these shall be entirely deposed from office, shall be subject to the judgment of the classis with the advice of the deputies of (particular) synod mentioned in article 11.

Article 80.

Furthermore among the gross sins, which are worthy of being punished with suspension or deposition from office, these are the principal ones: false doctrine or heresy, public schism, public

fendants have had such a trial as is contemplated by the law in such cases. Neither can we agree with the defendants' contention that the tribunal which passed upon the matter was a biased and prejudiced tribunal, and had pre-judged defendants' case before hearing, since it was the tribunal provided by the church law, and when defendants became affiliated with this religious denomination they thereby consented to be tried by such tribunal.

"I must conclude, therefore, that the defendants have been properly and legally removed from their respective offices by the duly constituted authorities of the church, and consequently they are no longer entitled to hold, manage and control the properties of the church by virtue of their holding the offices of minister and deacons and elders of the First Christian Reformed Church of Muskegon."

Supporting the opinion we quote the following:

"The pastor of a church in his pastoral office performs a spiritual function. Spiritualities are beyond the reach of the temporal courts. It follows that a church which has employed a pastor, though the employment be for a fixed term and at a fixed salary, may at any time, so far as the civil courts are concerned, depose him from his spiritual office, subject only to the inquiry by the courts as to whether the church, or its appointed tribunal, has proceeded according to the law of the church. * * * And in the case of a church organized on the congregational plan the inquiry is limited to the determination whether in fact that church has acted as a congregation." *Barton* v. *Fitzpatrick,* 187 Ala. 273 (65 South. 390).

---

blasphemy, simony, faithless desertion of office or intrusion upon that of another, perjury, adultery, fornication, theft, acts of violence, habitual drunkenness, brawling, filthy lucre; in short, all sins and gross offenses, as render the perpetrators infamous before the world, and which in any private member of the church would be considered worthy of excommunication.

"The civil courts will not enter into a consideration of church doctrine or church discipline, nor will they inquire into the regularity of the proceedings of the church judicatories having cognizance of such matters. To assume such jurisdiction would not only be an attempt by the civil courts to deal with matters of which they have no special knowledge, but it would be inconsistent with complete religious liberty untrammeled by State authority. On this principle the action of the church authorities in the deposition of pastors and the expulsion of members is final. Where, however, a church controversy involves rights growing out of a contract recognized by the civil law, or the right to the possession of property, civil tribunals cannot avoid adjudicating these rights under the law of the land, having in view, nevertheless, the implied obligations imputed to those parties to the controversy who have voluntarily submitted themselves to the authority of the church by connecting themselves with it. Therefore, where it is admitted, as in this case, that property belongs to a particular church, and the only question is whether the defendant claiming to be pastor should be excluded from its use, this court will only consider whether the church has ordered his exclusion, not whether it was right in so doing. Neither will the court as a civil tribunal undertake to determine whether the resolution directing exclusion was passed in accordance with the canon law of the church, except in so far as it may be necessary to do so in determining whether it was, in fact, the church that acted." *Morris Street Baptist Church* v. *Dart,* 67 S. C. 338 (45 S. E. 753, 100 Am. St. Rep. 727).

See, also, authorities reviewed in *Bear* v. *Heasley, supra.* What has been said disposes of this case. It is unnecessary to consider the other question suggested in the opinion, except in one particular. In 1902 the First Christian Reformed Church of Muskegon was incorporated under Act No. 148, Public

Acts of 1901, being an act to provide for the incorporation of Christian Reformed Churches of America. Section 2 of the act provides in part:

"The fundamental principles of the proposed organization which shall in all cases be in conformity to the faith and constitution or form of government as adopted by the synod of the Christian Reformed Church of America in the year A. D. eighteen hundred ninety-six, and any amendments or additions thereto as shall have been adopted and may hereafter be adopted by the synod of said church."

Of the articles of association of this religious corporation the fourth was:

"We irrevocably appropriate to the maintenance of our confession and government forever, such real and personal estate as this church now has or may hereafter acquire, and that to these objects alone it shall be applied. And that in case of any departure from the above established standards of doctrine and government by any portion of this church or congregation, such estate shall be held and enjoyed exclusively by those who adhere to said standards hereby declared and established as the basis of our church and congregation."

In December, 1919, defendant Bultema and others attempted an amendment to said article four by adding thereto the following:

"Provided, however, that in case no departure from the established standards of doctrine and government is declared or admitted by this church or congregation, or a majority thereof and particularly if the congregation shall insist in good faith that it does and continues to conform to all essential established standards of doctrine and government of the church, then, and in that case all of the personal and real estate acquired and held by this congregation or this corporation shall

continue to be so held and enjoyed and controlled, absolutely by this congregation or the majority thereof having the right to vote, and that in no case shall a minority of the congregation have a right to take away from the majority of the congregation any of the real or personal property thereof, unless such majority shall have declared or admitted that it has departed from the established standards or doctrine and government of this church or denomination."

The amendment attempted is void. It is an effort to set up in this church of presbyterial form of government a congregational form of government. What was said in *Fuchs* v. *Meisel,* 102 Mich. 357 (32 L. R. A. 92), is applicable:

"In the freedom of conscience and the right to worship allowed in this country, the defendants and the members of this church undoubtedly possessed the right to withdraw from it, with or without reason. But they could not take with them, for their own purposes, or transfer to any other religious body, the property dedicated to and conveyed for the worship of God under the discipline of this religious association; nor could they prevent its use by those who choose to remain in the church, and who represent the regular church organization. If complainants maintain the allegations of their bill, —that they represent the regularly organized body of the church, and are its regular appointees,—they are entitled to the relief prayed."

Articles of the church order are printed in the margin.

The decree is affirmed, with costs to the plaintiffs.

STEERE, C. J., and MOORE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred. The late Justice BROOKE did not sit.