Charles W. MUSIC, Appellant,

v.

**UNITED METHODIST CHURCH and Bishop Robert H. Spain, Appellees.**

No. 93–SC–388–MR.

Supreme Court of Kentucky.

Oct. 28, 1993.

Thomas E. Clay, Barbara M. Gunther, Louisville, for appellant.

Susan D. Phillips, William P. Swain, Boehl, Stopher and Graves, Louisville, for appellees.

## MEMORANDUM OPINION
## OF THE COURT

Charles W. Music appeals from the Court of Appeals' order of May 10, 1993, granting CR 76.36 relief to appellees and directing Judge Thomas B. Wine to dismiss this action for lack of subject matter jurisdiction.

In 1991, the appellant (Music) filed an action against the appellees, United Methodist Church and Bishop Robert H. Spain. Dr. Music claimed that a contractual relationship had been established between the parties by virtue of the *Book of Discipline of the United Methodist Church* (1988 edition), the "Employee Manual" of the United Methodist Church. He further claimed that appellees violated the terms of his "employment contract" by failing to follow the procedures set forth in Paragraphs 2620–2625 of the *Book of Discipline* when they placed him on a forced leave of absence/sabbatical on December 31, 1990. Dr. Music sought monetary damages.

The appellees filed a motion for summary judgment alleging lack of subject matter jurisdiction and maintained that the First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, prohibited the judge of the Jefferson Circuit Court from assuming jurisdiction in this action. Additionally, they alleged that appellant failed to properly utilize the appellate process defined in the *Book of Discipline,* which would have entirely resolved this matter.

In appellant's response to the motion for summary judgment he claimed that this case was not a church dispute protected by the First Amendment, but merely a simple contract case. Judge Wine of the Jefferson Circuit Court agreed with appellant, holding that the *Book of Discipline* is the book of law for the United Methodist Church and as appellant only asked the court to determine whether the secular dictates of the *Book of Discipline* were adhered to, such is entirely within the jurisdiction of the court.

■ Appellant concedes that the United States Supreme Court has held that civil courts have no role in deciding ecclesiastical questions. *Presbyterian Church v. Hull Church,* 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). *Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952). The United States Supreme Court has adhered to the proposition that the First and Fourteenth Amendments permit hierarchial religious organizations to establish their own rules and regulations for internal discipline and government and to create tribunals resolving disputes over these matters. Where this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding. *Serbian Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). Civil courts may intervene in ecclesiastical areas, however, if there is fraud, collusion or arbitrariness. *Presbyterian Church, supra.*

Although in *Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979), the Court adopted a "neutral principles" test permitting a court to interpret provisions of religious documents involving property rights and other nondoctrinal matters as long as the analysis can be done in purely secular terms,

it cautioned that not all provisions of a church constitution are susceptible to neutral interpretation.

Moreover, that Court expressly noted that the "neutral principles" exception to the usual rule of deference applies only to cases involving disputes of church property. Quoting *Presbyterian Church v. Hull Church*, the Court in *Jones* stated: "[T]here are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded." *See also Parker v. Harper*, 295 Ky. 686, 175 S.W.2d 361 (1943).

■ The "neutral principles" doctrine should not be extended to religious controversies in the areas of church government, or order and discipline.

■ This case does not involve a dispute over church property, but relates to appellant's status and employment as a minister of the church. It therefore concerns internal church discipline, faith, and organization, all of which are governed by ecclesiastical rule, custom and law. *See Hutchison v. Thomas*, 789 F.2d 392 (6th Cir.1986); *Kaufmann v. Sheehan*, 707 F.2d 355 (8th Cir.1983).

Appellant contends that arbitrariness is demonstrated in the present case by appellees' refusal to follow the established procedures of their own *Book of Discipline* and that, therefore, court interference is permissible.

*Vincent v. Raglin*, 114 Mich.App. 242, 318 N.W.2d 629 (1982), cited by appellant, is distinguishable from the case at bar. The sole issue there was whether the Board of Trustees' purported dismissal of the pastor was the "action of the church." In that case church members hired four security guards who, armed with nightsticks, forcibly removed the pastor. The court found sufficient evidence to believe an unlawful conspiracy existed to deprive defendant of his pastorate and that there was a question of whether a fraudulent vote had been taken on the church membership. The court, citing *Borgman v. Bultema*, 213 Mich. 684, 182 N.W. 91 (1921) stated:

> Neither will the court as a civil tribunal undertake to determine whether the resolution directing exclusion (of the pastor) was passed in accordance with the canon law of the church, except in so far as it may be necessary to do so in determining whether it was, in fact, the church that acted.

In the case now before the court, there is no issue concerning whether "the church" acted. Herein appellant is asking us to do that which is prohibited by *Vincent* and *Borgman*—determine only whether he was removed in accordance with church law.

The United States Court of Appeals for the District of Columbia Circuit has held that oral employment contracts between a church and its minister would be enforceable in civil court if such proceedings would not create excessive entanglements with religious beliefs. *Minker v. Baltimore Annual Conference of United Methodist Church*, 894 F.2d 1354 (D.C.Cir.1990). That case involved a breach of contract claim based on both an oral promise of a better posting and an antidiscrimination passage from the *Book of Discipline*. However, the court found that interpretation of the appointment and antidiscrimination provisions of the church constitution was inherently an ecclesiastical matter which deprived the court of jurisdiction to hear the minister's claim that the church constitution created an enforceable agreement that the church would not discriminate against him on the basis of age in making appointments. The only claim by Minker that survived review was that concerning an oral contract between himself and his superintendent, who allegedly promised him a more suitable congregation. The court stated that there should be a direct inquiry as to whether the superintendent made such a promise, whether appellant gave consideration, and whether such congregations became available but were not offered. The court remanded on this issue stating that "appellant should be allowed to demonstrate that he can prove his case without resorting to impermissible avenues of discovery or remedies." However, the court went on to say that if appellant was forced to inquire into matters of ecclesiastical policy, the court may grant summary judgment, as such would create an excessive entanglement with religion. "[T]he first amendment forecloses any inquiry into the church's assessment of Minker's suitability for a pastorship, even for the purpose of showing it to be pretextual...."

As appellant's claim herein cannot be separated from an interpretation of church law, *Book of Discipline,* we must find that an excessive entanglement with religion would exist, so as to preclude jurisdiction.

In *Marsh v. Johnson,* 259 Ky. 305, 82 S.W.2d 345 (1935), this court, in recognition of the principle of separation of church and state, held that secular courts have no jurisdiction over ecclesiastic controversies and will not interfere in matters of discipline or expulsion of ministers, as persons who assume the relation of minister or member of a church voluntarily covenant to conform to its canons and rules and to submit to its authority and discipline.

*Williams v. Palmer,* 177 Ill.App.3d 799, 127 Ill.Dec. 232, 532 N.E.2d 1061 (1988), states as follows:

> [T]he appointment of a pastor is a purely subjective decision to be made by the empowered bishop to advance the purpose of the church organization. Appointment is undoubtedly an ecclesiastical matter to which judicial deference is mandated by the First Amendment. Whether or not the Conference followed required procedure in appointing plaintiff is not for a civil court to consider, because it would entail scrutinizing the appointment decision-making process and reviewing the subjective criteria used by the church organization in reaching its decision. Plaintiff's remedy is to appeal the decision of the empowered bishop to higher judicial tribunals within the church hierarchy.

In *McClure v. Salvation Army,* 460 F.2d 553 (5th Cir.), cert. den. 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972), the court stated:

> The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern.

The Supreme Court in *Milivojevich, supra,* adhered to the rule of strict deference to decisions of the church in matters of this nature. "[T]he only exception to strict deference apparently left open by [*Milivojevich* ] was 'marginal review' for fraud or collusion and the possibility of such review was not endorsed, but merely left for later consideration." *Hutchison, supra.*

The Court further states:

> We have concluded that whether or not there is room for "marginal civil court review" under the narrow rubrics of "fraud" or "collusion" when church tribunals act in bad faith for secular purposes, no "arbitrariness" exception—in the sense of an inquiry whether the decisions of the highest ecclesiastical tribunal of a hierarchical church complied with church laws and regulations—is consistent with the constitutional mandate that civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical policy on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in that sense "arbitrary" must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or else into the substantive criteria by which they are supposedly to decide the ecclesiastical question. But this is exactly the inquiry that the First Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them. (*Hutchison, supra,* quoting *Milivojevich, supra* ).

Even if *Milivojevich* provides for "marginal review" for fraud or collusion, this court holds, as in *Hutchison, supra:*

> This Court finds no basis for intervention in the instant case. There is no showing of such egregious action by the hierarchical authorities of the United Methodist Church to justify court interference, if such interference is even permitted under *Milivojevich.* Assuming, without deciding, that review is allowed for fraud or collusion, it is still only allowed for fraud or collusion of the most serious nature undermining the very authority of the decision-making body. Certainly there is no claim or showing of such fraud or collusion here. And we emphasize that we do not hold that

such great fraud would be a basis for court interference. We merely state that possibility has been left open by the Supreme Court, but further state there is no showing whatever in this case that such egregious conduct occurred.

In determining the appellant's claim in the present case, it would inevitably require interpretation of provisions in the *Book of Discipline* that are highly subjective, spiritual, and ecclesiastical in nature. Such suit necessarily involves interpretation of the minister's occupational qualifications, and therefore forecloses any inquiry by civil courts.

The Jefferson Circuit Court's subject matter jurisdiction over suits of this nature is preempted by the First and Fourteenth Amendments to the United States Constitution and, therefore, the order of the Court of Appeals granting CR 76.36 relief is hereby affirmed.

All concur.