*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIMOTHY BOGLE and CHEVELLE BROWN,

      Plaintiffs-Appellees,

and

EVANGEL MINISTRIES CHURCH
MEMBERSHIP,

      Plaintiff,

v

LORENZO SEWELL and EVANGEL ECHOS
CHURCH OF THE AIR,

      Defendants-Appellants.

UNPUBLISHED
May 26, 2022

No. 357910
Wayne Circuit Court
LC No. 20-000866-CZ

Before: MURRAY, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

Defendants, Lorenzo Sewell and Evangel Echos Church of the Air (the Church), appeal as of right the trial court's order denying their motion for summary disposition, granting summary disposition in favor of plaintiffs, Timothy Bogle and Chevelle Brown, and entering a declaratory judgment in favor of plaintiffs. On appeal, defendants argue that, under the ecclesiastical abstention doctrine, the trial court was required to abstain from adjudicating plaintiffs' claim. By not abstaining, defendants argue, the trial court violated the Free Exercise Clauses and Establishment Clauses of the United States Constitution and the Michigan Constitution. We disagree and affirm.

## I. FACTS

-1-

This case arises from a dispute between plaintiffs and defendants over the Church's form of corporate governance. The Church is a nonprofit ecclesiastical corporation.[1] It was incorporated in 1968, after "Articles of Association"[2] were filed with the Michigan Corporation and Securities Commission. Plaintiffs are members of the Church. Since around the end of 2018, Sewell has served as the Church's senior pastor and president.

The same year the Church was incorporated it executed a constitution and bylaws. The 1968 constitution stated that governance of the Church would be vested in the Church's members, and that the Church's leadership would be charged with carrying out the will of the members. Collectively, these documents gave members of the Church the right to elect who was to serve as the Church's pastor and who was to serve on the Church's governing board. These documents gave them the right to remove the pastor or members of the governing board as well, along with the right to amend or repeal the constitution or bylaws by a majority vote.

In 2011, the constitution and bylaws (collectively the 2011 amendments) were amended. On the whole, the 2011 amendments eliminated the voting rights of the Church's membership. Under the 2011 amendments, the Church's governing board—now referred to as the board of elders—would select who was to serve as senior pastor of the Church. In turn, the senior pastor would nominate members to the board of elders, and the sitting board of elders would then confirm or deny the nomination by majority vote. Likewise, only the board of elders would be able to remove either the senior pastor or a member of the board of elders. Lastly, only the board of elders could amend the bylaws.

Years after the 2011 amendments purportedly took effect, the Church offered Sewell the position of senior pastor. Within a year after that, the Church's constitution and bylaws were amended in 2019.[3] The 2019 amendments went a step further than the 2011 amendments by explicitly stating that the Church's members had no voting power; any vote of the membership would only be advisory.

---

[1] Although the Articles of Association do not explicitly describe the Church as a nonprofit corporation, the Michigan general corporation statute provides that all ecclesiastical corporations "shall be a non-profit corporation and subject to the provisions of this act relating to non-profit corporations generally except as specifically otherwise provided." MCL 450.178.

[2] Though the Church did not specifically describe these as articles of incorporation, under the Michigan Nonprofit Corporation Act, MCL 450.2101 *et seq*., the Articles of Association would be considered articles of incorporation. MCL 450.2105 defines articles of incorporation as "[t]he original articles of incorporation or any other instrument filed or issued under any statute to organize a domestic or foreign corporation, as amended, supplemented, or restated by certificates of amendment, merger, conversion, or consolidation, or other certificates or instruments filed or issued under any statute." MCL 450.2105(2)(a).

[3] The 2019 constitution indicates that the Church's name had been changed to "Evangel Ministries" at this time.

Alleging that Sewell and the board of elders had adopted the 2019 amendments without the consent of the Church's members, plaintiff Evangel Ministries Church Membership[4] sued Sewell in January 2020. Sewell moved for summary disposition under MCR 2.116(C)(8), and the trial court granted this motion, dismissing Evangel Ministries' claim. On Evangel Ministries' motion, however, the trial court granted Evangel Ministries leave to file an amended complaint.

Plaintiffs Bogle and Brown then filed an amended complaint containing three counts. In Count 1 plaintiffs asked the trial court for a declaratory judgment that, under the Michigan Nonprofit Corporation Act (MNCA), MCL 450.2101 *et seq*., the Church was organized on a membership basis rather than a directorship basis and that the 2019 amendments were invalid. They also moved the trial court to enter an order directing the Church to adopt a new set of bylaws. In Count 2 plaintiffs alleged that Sewell had breached his fiduciary duties of loyalty and care, while in Count 3 plaintiffs alleged that Sewell had engaged in illegal, fraudulent, or oppressive conduct in violation of MCL 450.2489. After defendants again moved for summary disposition under MCR 2.116(C)(8), the trial court dismissed Counts 2 and 3 of the amended complaint.

A few weeks later, defendants moved for summary disposition under MCR 2.116(C)(10), as to Count 1 of plaintiffs' amended complaint. Defendants argued that, through the 2011 and 2019 amendments, the Church had declared itself to be directorship based. If the trial court were to declare otherwise, the trial court would be substituting its judgment for that of the Church's leadership. In effect, the trial court would entangle itself in purely ecclesiastical questions. So, defendants argued, the trial court should abstain from deciding this question under the ecclesiastical abstention doctrine.[5]

In response, plaintiffs argued that there was no genuine issue of material fact that the Church was organized on a membership basis. Plaintiffs argued that this was plain from the following provision from the Articles of Association:

> The doctrine, rules and discipline shall generally be based upon those of the Evangel Church as modified and agreed upon, however, by the members of this church, and in no event shall the doctrine and business of this church be subject to or controlled by any higher church authority than the membership of this church.

Contending that the 2011 and 2019 amendments conflicted with the Church's membership-based structure, plaintiffs argued that they were invalid. Not only did the 2011 and 2019 amendments conflict with the Church's membership-based structure, plaintiffs continued, the Church's members had never voted to approve them. So, the 2011 and 2019 amendments were invalid for this reason as well.

---

[4] Plaintiffs Bogle and Brown were not named in this complaint. Also, Evangel Ministries appears to be the same entity as Evangel Echos Church of the Air.

[5] Defendants claimed that summary disposition would be proper under the ministerial exception as well, but provided no substantive argument on this point.

After a hearing on defendants' motion, the trial court denied the motion and granted summary disposition under MCR 2.116(I)(2) in favor of plaintiffs. To begin, the trial court concluded that it could consider plaintiffs' claim, reasoning that applying the MNCA to resolve an issue involving corporate governance was not an ecclesiastical matter. Next, interpreting the Articles of Association, the trial court concluded that the Church was organized on a membership basis under the MNCA. Accordingly, the trial court concluded that the Church could not adopt bylaw provisions depriving members of their voting power, for such provisions would conflict with the Church's Articles of Association. As a result, the trial court entered a final order denying defendants' motion for summary disposition under MCR 2.116(C)(10), granting summary disposition in favor of plaintiffs under MCR 2.116(I)(2), and entering a declaratory judgment in favor of plaintiffs. In the declaratory judgment, the trial court declared that the Church was organized on a membership basis and that the 2011 and 2019 amendments were null and void as a result. Defendants moved for reconsideration, but the trial court denied this motion. This appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 242; 964 NW2d 50 (2020) (citation omitted).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (internal quotation marks and citation omitted)].

"If, after careful review of the evidence, it appears to the trial court that there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law, then summary disposition is properly granted under MCR 2.116(I)(2)." *Cadillac Rubber & Plastics, Inc v Tubular Metal Sys, LLC*, 331 Mich App 416, 422; 952 NW2d 576 (2020), quoting *Lockwood v Ellington Twp*, 323 Mich App 392, 400-401; 917 NW2d 413 (2018) (internal quotation marks omitted).

Any underlying issue of statutory interpretation is a question of law subject to de novo review. *In re MCI Telecom Complaint*, 460 Mich 396, 443; 596 NW2d 164 (1999). Likewise, this Court reviews de novo questions of constitutional law. *Winkler by Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017) (citations omitted). This Court also reviews de novo a trial court's decision on a motion concerning a request for declaratory judgment. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 542; 904 NW2d 192 (2017) (citation omitted).

## III. ANALYSIS

On appeal, defendants do not explicitly challenge the trial court's interpretation of the Articles of Association or its interpretation of the MNCA. Instead, defendants argue that, by involving itself in this dispute at all, the trial court violated the First Amendment of the United States Constitution and Article 1, § 4, of Michigan's 1963 Constitution. By involving itself in this dispute, defendants explain, the trial court inserted itself into a purely ecclesiastical affair, when it should have abstained.[6]

In relevant part, the First Amendment of the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" US Const, Am I. "The First Amendment applies to the states through the Fourteenth Amendment." *Weishuhn v Catholic Diocese of Lansing*, 279 Mich App 150, 156; 756 NW2d 483 (2008), citing US Const, Am XIV. Like its federal counterpart, the Michigan Constitution also contains a guarantee of religious freedom. See Const 1963, art 1, § 4. The Michigan Constitution "is at least as protective of religious liberty as the United States Constitution." *Winkler*, 500 Mich at 337 n 4 (internal quotation marks and citation omitted).

The ecclesiastical abstention doctrine "arises from the Religion Clauses of the First Amendment of the United States Constitution." *Winkler*, 500 Mich at 337.[7] The purpose of the ecclesiastical abstention doctrine is "to ensure that, in adjudicating a particular case, a civil court does not infringe the religious freedoms and protections guaranteed under the First Amendment." *Id*. at 339. Although the ecclesiastical abstention doctrine informs how civil courts must adjudicate claims involving ecclesiastical questions, it does not deprive civil courts of subject-matter jurisdiction over such claims. *Id*. at 339-341. "[A]pplication of the ecclesiastical abstention doctrine is not determined by reference to the category or class of case the plaintiff has stated," and "[w]hether a claim sounds in property, tort, or tax, for instance, is not dispositive." *Id*. at 341. Further, whether a claim "is brought against a religious entity, or simply appears to be the sort that 'likely involves ecclesiastical policies' " is not dispositive. *Id*., quoting *Dlaikan v Roodbeen*, 206 Mich App 591, 593; 522 NW2d 719 (1994), overruled by *Winkler*, 500 Mich at 330, 336. "What matters instead is whether the actual adjudication of a particular legal claim would require the resolution of ecclesiastical questions; if so, the court must abstain from resolving those questions itself, defer to the religious entity's resolution of such questions, and adjudicate the claim accordingly." *Id*. at 341.

Whether the Church was organized on a membership basis or a directorship basis was not an ecclesiastical question—it was a corporate law question. To answer this question, the trial court needed to look no further than the Church's Articles of Association and the MNCA. Resolving

---

[6] Even though defendants mention the ministerial exception in their statement of the questions presented in their brief on appeal, defendants do not actually argue that the ministerial exception applies. And in any event, the ministerial exception applies to cases concerning the employment relationship between a religious institution and its ministers, *Winkler*, 500 Mich at 340 n 5; *Hosanna-Tabor Evangelical Lutheran Church & Sch v EEOC*, 565 US 171, 188; 132 S Ct 694; 181 L Ed 2d 650 (2012), which is not at issue here.

[7] In *Winkler*, the Supreme Court noted that the religious liberty provision under the Michigan Constitution does not add to or alter the ecclesiastical abstention doctrine. *Id*. at n 4.

the parties' dispute did not require the trial court to interpret any of the Church's religious doctrine or to pass judgment on what it believed to be the form of corporate governance most in line with the Church's discipline or values. It simply required the trial court to apply Michigan statutory law against the language of the Articles of Association. See *id.* at 339, citing *Borgman v Bultema*, 213 Mich 684, 703; 182 NW 91 (1921) ("Where . . . a church controversy involves rights growing out of a contract recognized by the civil law, or the right to the possession of property, civil tribunals cannot avoid adjudicating these rights under the law of the land, having in view, nevertheless, the implied obligations imputed to those parties to the controversy who have voluntarily submitted themselves to the authority of the church by connecting themselves with it.").

If there were any doubt, our Supreme Court has intimated that a question about a church's corporate structure is not an ecclesiastical question. See *Borgman*, 213 Mich at 704-705. *Borgman* also concerned two groups within a church that disagreed about the church's corporate governance structure. *Id.* at 686-687, 690. The defendants attempted to amend the church's articles of association to change the church's government structure from one presbyterial in form to one congregational in form. *Id.* at 690, 704-705. The Supreme Court did not abstain from resolving whether the defendants' attempted amendment was valid, but instead adopted the trial court's conclusion that the church constitution called for a presbyterial form of government, and that the defendants' attempted amendment was void, for it conflicted with the church's constitution. *Id.* at 690-691, 703-705.

In short, resolving whether the Church was organized on a membership or directorship basis did not require the trial court to entangle itself in any ecclesiastical or religious matter. The trial court therefore did not err by adjudicating plaintiffs' claim. For the same reason, neither the trial court's May 18, 2021 order nor its order denying defendants' motion for reconsideration interfered with defendants' free exercise of religion under either the First Amendment or Article 1, § 4, of Michigan's 1963 Constitution. Nor did these orders constitute "excessive entanglement between government and religion" in violation of the Establishment Clause in the United States Constitution or the Establishment Clause in the Michigan Constitution. *Lemon v Kurtzman*, 403 US 602, 613-614; 91 S Ct 2105; 29 L Ed 2d 745 (1971); see also *Scalise v Boy Scouts of America*, 265 Mich App 1, 11; 692 NW2d 858 (2005) (noting that Michigan's Establishment Clause analysis is governed by *Lemon*).

In addition to their constitutional arguments, defendants raise arguments concerning MCL 450.181 and MCL 450.185. Because defendants raised these arguments for the first time in what was functionally a motion for reconsideration, defendants failed to properly preserve these arguments for appeal.[8] See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519;

---

[8] Defendants raised these arguments in their objection to plaintiffs' proposed order, after the trial court had issued its March 4, 2021 ruling from the bench. While defendants styled their filing as an objection to plaintiffs' proposed order, in substance, it was an attack on the merits of the trial court's decision. Cf. *Attorney General v Merck Sharp & Dohme Corp*, 292 Mich App 1, 9; 807 NW2d 343 (2011), particularly because objections to the form of an order cannot challenge the

773 NW2d 758 (2009). Defendants have therefore waived review of these arguments. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). At any rate, defendants' arguments lack merit.

With regard to MCL 450.185, defendants suggest that this statute exempts an ecclesiastical corporation from having to comply with the MNCA. However, MCL 450.185 appears in the Michigan general corporation statute, not the MNCA. More importantly, MCL 450.185 does not exempt all ecclesiastical corporations from having to comply with that statute. If an exemption at all, MCL 450.185 is an exemption only for ecclesiastical corporations in existence before the enactment of the Michigan general corporation statute:

> Nothing in this act contained shall be construed as limiting or restricting the rights, powers, privileges, immunities or the practices *of any church heretofore established or incorporated under any law of this state*; nor as requiring any such church to alter or change any rule of discipline, custom or usage in respect of its church policy or government; nor as interfering with the lawful acquisition, use or disposition of any property now owned or held by any such church corporation. The provisions of this act relating to ecclesiastical corporations shall be liberally construed in the interests of religion and morality. [Emphasis added.]

" "Heretofore" is an adverb meaning "up to this time." *Merriam Webster's Collegiate Dictionary* (11th ed). Hence, MCL 450.185 refers to any church established up until the point that MCL 450.185 came into effect. MCL 450.185 went into effect on September 18, 1931. 1931 PA 327. The Church was incorporated several decades later on May 22, 1968. MCL 450.185 does not apply to the Church.

Next, defendants argue that the trial court erred by failing to consider MCL 450.181, which states:

> Every such ecclesiastical corporation shall have authority to adopt by-laws prescribing the qualifications of members; the manner in which they shall be admitted, suspended or expelled; the number and official titles of the person or persons who control the temporal affairs of such corporation; their terms of office; the manner of their selection and removal from office; their respective official duties; the time and manner of calling and holding church business meetings and the number of members constituting a quorum; how far such corporation shall be subject to the approval or control of any other corporation or higher church body which corporation or body shall be named; the manner and condition under which property, both real and personal, may be acquired, held and disposed of; and such other by-laws as may be deemed necessary for the management of the affairs of such corporation. The by-laws may also prescribe how the same may be altered, amended or repealed.

---

substance of the ruling. MCR 2.602(B)(3)(b). As a result, defendants' objection was in essence a motion for reconsideration.

Citing the foregoing language, defendants argue that "churches are free to amend their own Bylaws in any way, at any time." Assuming for the sake of argument that defendants' interpretation of MCL 450.181 is correct, it is unclear how this advances defendants' argument. The trial court's ruling rested on its interpretation of the Church's Articles of Association—not on whether the Church had the ability to amend its bylaws. The trial court never suggested that an ecclesiastical corporation could not adopt bylaws or prescribe how those bylaws may be amended. The trial court concluded only that, under the MNCA, an ecclesiastical corporation could not adopt bylaws inconsistent with the ecclesiastical corporation's articles of incorporation. Defendants do not challenge that conclusion, and they do not otherwise explain how MCL 450.181 undermines it.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Michael J. Kelly