## HOLWERDA v. HOEKSEMA.

1. RELIGIOUS SOCIETIES—CONTROL OF CHURCH PROPERTY—ISSUES.

   In a suit by members remaining loyal to the Christian Reformed Church of America to enjoin the minister and certain members of a local church of said denomination from controlling the local church property after their exclusion from the denomination by the classis, a governing body of said church, whether said exclusion was prudent or imprudent, right or wrong, will not be inquired into by the court, nor will it be determined whether such action was in accordance with the canon law of the church except in so far as it may be necessary to do so in determining whether the classis had jurisdiction of the matter—whether the act is that of the society itself.[1]

2. SAME—JURISDICTION OF GOVERNING CHURCH BODY—RIGHT OF APPEAL.

   The decision of the court below that the classis had jurisdiction to act, did act, and that defendants are bound by its decision excluding them from the denomination without right of stay of proceedings pending appeal to the supreme governing body of the church, held, justified by the record.[2]

3. SAME—CHURCH MEMBERS HAVE RIGHT TO WITHDRAW BUT NOT TO TAKE CHURCH PROPERTY FROM DENOMINATION.

   Members of a church possess the right to withdraw from it, with or without reason, but they may not take with them, for their own purposes, or transfer to any other religious body, the property dedicated to and conveyed for the worship of God under the discipline of the particular religious association to which the church belongs, nor may they prevent the use of such property by those who choose to remain in the church, and who represent the regular church organization.[3]

4. SAME—PARTIES—QUESTION OF DAMAGES FOR UNLAWFUL RETENTION OF CHURCH PROPERTY BY SECEDING MEMBERS NOT IN ISSUE.

   Where the suit is in the names of the church members,

[1]Religious Societies, 34 Cyc. pp. 1184, 1188; [2]Id., 34 Cyc. p. 1173 (Anno); [3]Id., 34 Cyc. p. 1168.

as individuals, and the local church corporation is not a party, the question of the rental value of the church property as damages during the time it was unlawfully retained by defendants is not in issue; the right to such damages, if any, being in the local church corporation, which, under the statute (3 Comp. Laws 1915, § 11034), has power to sue.[4]

Appeal from Kent; Dunham (Major L.), J.   Submitted October 16, 1925.   (Docket No. 95.)   Decided December 22, 1925.

Bill by William Holwerda and others against Herman Hoeksema and others for an injunction and an accounting.   From a decree for plaintiffs, defendants appeal.   Modified and affirmed.

*Dorr Kuizema* and *Jay W. Linsey,* for plaintiffs.

*Harris E. Galpin* (*Joseph T. Riley,* of counsel), for defendants.

CLARK, J.   East Street Christian Reformed Church, of Grand Rapids, Michigan, is a corporation (3 Comp. Laws 1915, § 11030 *et seq.*).   It is one of the church bodies which comprise the denomination known as the Christian Reformed Church of America. The form of church government is presbyterial.   The local governing body of the church is the consistory, being the deacons and the elders and the minister, if there be one.   Next above the consistory is the classis, which is made up of delegates sent from the churches in a certain district.   The classis having jurisdiction of the East Street church is known as Classis Grand Rapids East.   The supreme governing body of the denomination is the synod, made up of delegates sent by the classes.   The synod meets every two years.
We quote from the testimony of Rev. Henry Beets, stated clerk of the synod:

---

[4]Corporations, 14a C. J. § 2892.

"In these various bodies * * * we have a certain standard of confession which we speak of as our forms of unity, namely, the Belgic or Netherlands Confession of 37 articles, the Heidelberg Catechism, divided into fifty-two Lord's days, and the five Canons of Dordrecht. Synod is the supreme body of our church when it comes to interpreting confessional standards and it is the final body of our church. I would use a parallel: like our Michigan Supreme Court interprets our State Constitution, so our synod is empowered to interpret our standards.

"So far synod has not written any new confessional standards. Once that synod interprets new confessional standards, it then becomes the duty of all members of good standing in our church to regulate themselves in doctrine and in life to them. These interpretations have the same binding force as the standards themselves which have not been interpreted unless a man can prove that the findings are not correctly stated, but this is to be determined by the synod, but when the synod has once spoken and determined those findings, that becomes final.

"The interpretations of the standards by synod make them a part of our standards and we have to regulate ourselves according to them. This applies to the ministers and consistories of all our churches."

And from the articles of association:

"The fundamental principles of the proposed organization which shall in all cases be in conformity to the faith and constitution or form of government as adopted by the synod of the Christian Reformed Church of America in the year A. D. eighteen hundred ninety-six, and any amendments or additions thereto as shall have been adopted and may hereafter be adopted by the synod of said church."

By the church order, ministers, deacons and elders are required to subscribe to the forms of unity. Among certain members of the denomination there began to be discussion and, later, controversy, respecting the doctrine of common grace, the defendant Rev. Herman Hoeksema, minister of the East Street church, taking a prominent part in it. Some members of his

church gave to him and to the consistory a protest in writing against his utterances in this respect. In the course of time, the matter first raised here by such protest found its way to the synod for interpretation and a finding respecting the soundness of the minister's utterances as measured by the forms of unity. The speaking of the synod is colored somewhat by its kindly effort to lead the minister from controversy back to harmony, but it, on this record, defined with certainty, in three points or paragraphs, the doctrine of common grace, and its interpretation is contrary to the views entertained by the minister. The synod attempted no discipline, as it might or might not do, beyond admonition and counsel. The session ended. The minister returned to his church. The controversy was renewed. The minister advanced his views unchanged, using pulpit, platform and press. That his views are in direct conflict with the synod's interpretation on the subject he admits, with becoming frankness and candor. Schism followed, a majority of the members, deacons and elders standing with the minister, a minority, some of them censured and denied communion by the consistory, remaining loyal, as they say, to the society itself. The minister and his followers held, and continue to hold, the church property valued at $100,000 and more.

The matter came before the classis. Hearing, protest, advice, request, accomplished little or nothing, the consistory being unmoved in its loyalty to the minister. Finally, after hearing, the classis ordered the minister and the consistory deposed, for the reason stated, and directed the organization of a consistory by and among the minority faction. A place of worship was secured temporarily, and a consistory was formed. Plaintiffs are its members. They claim to be the duly constituted consistory of the church, and to be entitled to the possession and control

of the church property, and that defendants, the minister, deacons and elders, have been duly and legally removed from their offices.

Defendants contend that they have not been legally deposed from their respective offices, and that they are entitled to function in their respective capacities and to possess and control the church property, and it is claimed, too, that an appeal has been taken to the synod from the decision of the classis and that in the meantime proceedings are stayed.

Plaintiffs, by bill, seek usual relief, including injunction, restoration of the church property and accounting. Plaintiffs had decree. Defendants have appealed.

Whether the decision of the classis, excluding defendants, was prudent or imprudent, right or wrong, we have no right to inquire. Nor will we undertake to determine whether the decision was in accordance with the canon law of the church, except in so far as it may be necessary to do so in determining whether the classis had jurisdiction of the matter, whether the act is that of the society itself. *Borgman* v. *Bultema,* 213 Mich. 684.

There are two principal questions for determination:

(1) Did the classis have jurisdiction to make the decision?

(2) Granting, for the purposes of this opinion only, that defendants had right of appeal, and that it has been claimed, does the claiming of appeal operate to stay execution of the decision of the classis?

From a study of the record and briefs, a perusal of the long and carefully prepared opinion of the trial judge, a reading of *Borgman* v. *Bultema, supra,* a like case, which arose within the same denomination, we conclude that the following are correct expositions of applicable church law:

Rev. Henry Beets, a clergyman of the denomination, at one time secretary of its missions, had attended

general synods in Holland, editor of the weekly organ of the church in America, author of church histories, and since 1902 stated clerk of the synod, testified:

"Herman Hoeksema is obligated to comply with the three points because synod laid down these three points as our official doctrinal interpretation. * * *

"After synod has spoken and Herman Hoeksema says that he disagrees with the three points, he then becomes subject to discipline. * * *

"Under our church law, that order (of classis) went into effect immediately. With reference to the claim of Herman Hoeksema that he has taken an appeal and that the consistory has taken an appeal from the decision of classis in the session of December, 1924, wherein he was suspended, it is his claim that during the pendency of this appeal to the synod, he has a right to exercise the office of minister and the consistory has a right to exercise its office, I deny that they have such rights because the formula of subscription says that until a decision made upon such an appeal, we are to acquiesce in the determination and judgment already passed. We agree to that when we are ordained or when we go into a new classis or when we become a local pastor. If a man could, during his appeal, do as he pleases, that would be inviting anarchy and chaos. * * *

"The order of suspension made by classis in December took effect immediately and from that time on Herman Hoeksema had no power or authority to act as minister in any of the Christian Reformed Churches nor had his consistory any power to so act, pending an appeal to synod."

Rev. Idzerd Van Dellen, a clergyman of the denomination, author of books, including an exposition of the church order, several times president and vice-president of the synod, testified:

"After Herman Hoeksema and others had started the publication of the Standard Bearer and that together with other statements on the part of Herman Hoeksema caused another protest to be submitted to the classis, and classis made an order suspending Herman Hoeksema and determining that the ecclesi-

astical relationship of the consistory had been broken off, it then became the duty, immediately upon the making of the order, of the consistory and Herman Hoeksema to submit to the decision of the classis. There is nothing in our church order that when a decision is made by classis suspending a minister and finding that the ecclesiastical relationship is broken upon the part of the consistory, that the consistory and minister can continue to function as such officers in a church pending an appeal to synod. The reason for this is that they promised in signing the formula of subscription to acquiesce in the decision of the classis and other bodies, even pending their appeal."

Dr. Samuel Volbeda, educated at Free University of Amsterdam and at Calvin College, now and for 11 years teacher of theology in Calvin College, and occupying the chair of church history and missions, testified:

"Rev. Hoeksema could not lawfully in our church make statements that he could not subscribe to the three points and that he did not agree with synod and that the synod of 1924 was wrong and the synod of 1618 and 1619 was correct, after synod had spoken on these matters. Such statements indicate that Rev. Hoeksema is disloyal to the church body. * * *

"After decision is made by the classis and an appeal is taken to the synod by one of the parties, during the meantime that party is required to submit to the decision. After classis on December 12, 1924, made an order suspending Herman Hoeksema and declaring that the consistory had broken its ecclesiastical relationship with the church, it then became the duty of Herman Hoeksema and his consistory to abide by the decision of classis. It became the duty of Herman Hoeksema to at once cease activities in that church as its minister and for the consistory to do the same. In our church organization there is no such a thing as a stay of proceedings after an order is once made by classis which would permit Herman Hoeksema to continue on and act as the minister of that church."

Prof. Clarence Bouma, "a professor of systematic theology at the seminary of the Christian Reformed

Church, * * * graduate of the Calvin College and Theological Seminary of Grand Rapids, Michigan, Princeton Theological Seminary, Princeton University, Harvard University," testified:

"Synod, in passing upon these three points, made an interpretation of the confessional standards and after this interpretation it became the duty of all members of the Christian Reformed Church to submit to them *ipso facto.* * * *

"If the Rev. Hoeksema does not submit to these interpretations, he lays himself open to be deposed in the proper way."

The decision of the trial judge is that the classis had jurisdiction to act, did act, that defendants were bound by its decision, and without right of stay of proceedings. We agree with him. Question (1) is answered in the affirmative, question (2) in the negative.

Again we call attention to the rule of *Fuchs* v. *Meisel,* 102 Mich. 357 (32 L. R. A. 92), quoted in *Borgman Case:*

"In the freedom of conscience and the right to worship allowed in this country, the defendants and the members of this church undoubtedly possessed the right to withdraw from it, with or without reason. But they could not take with them, for their own purposes, or transfer to any other religious body, the property dedicated to and conveyed for the worship of God under the discipline of this religious association; nor could they prevent its use by those who choose to remain in the church, and who represent the regular church organization. If complainants maintain the allegations of their bill,—that they represent the regularly organized body of the church, and are its regular appointees,—they are entitled to the relief prayed."

The decree further provides:

"It is further ordered, adjudged and decreed that defendants pay to the plaintiffs herein as damages for the wrongful detention and possession of said

church property, the sum of one hundred ninety-two ($192.00) dollars per week, commencing on the 31st day of December, 1924, and continuing so long as defendants shall occupy and possess said church property, and that plaintiffs may have execution against these defendants for the collection of said damages."

This feature of the decree must rest on evidence received of fair rental value of the property. If defendants wrongfully have held possession of the property, who, if any one, may ask recovery of damages on the measure of rental value? Clearly, it must be the corporation itself, East Street Christian Reformed Church. It has power to sue (3 Comp. Laws 1915, § 11034). Plaintiffs filed this bill individually, alleging in a paragraph that they are the consistory of the church. The corporation is not a party. But it is, on this point, the real party in interest, and is the proper and necessary party to such recovery. 14A C. J. p. 798. Whether any such recovery can be had, it is unnecessary to determine, and we do not determine.

Other questions have been considered, but require no discussion.

So modified, the decree is affirmed. Defendants will have costs in this court.

MCDONALD, C. J., and BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, J., concurred.