SECOND PROTESTANT REFORMED CHURCH OF
GRAND RAPIDS v. BLANKESPOOR.

SAME v. SCHIPPER.

1. RELIGIOUS SOCIETIES—FORM OF GOVERNMENT—PROTESTANT RE-
FORMED CHURCH.

The form of government of the denomination known as the
Protestant Reformed Churches of America is presbyterial.

2. SAME—STATUTES—BYLAWS—PRESBYTERIAL GOVERNMENT.

The provision of the corporation code, empowering an ecclesiasti-
cal corporation to adopt bylaws prescribing how far the cor-
poration shall be subject to the approval or control of any
other corporation or higher church body, combined with pro-
vision of the articles stating members should worship and
labor together according to the discipline, rules and usage of
the Protestant Reformed Churches of America as from time
to time authorized and declared by the church order of such
church had the effect of placing the local chuch in a relation-
ship to the denomination and to its higher church bodies that
created a presbyterial form of government for the local church
(CL 1948, § 450.181).

3. SAME—BYLAWS—GOVERNMENT OF LOCAL CHURCH—PROPERTY.

A local church, which is a member of a denomination whose
form of government is presbyterial, and which is organized
under the corporation act empowering an ecclesiastical cor-
poration to adopt bylaws subjecting the corporation to the
approval or control of a higher church body would be subject
to such higher body, where its bylaws so subjected it notwith-

REFERENCES FOR POINTS IN HEADNOTES

[2, 3]  45 Am Jur, Religious Societies § 4.
[4]  45 Am Jur, Religious Societies § 16.
[5]  45 Am Jur, Religious Societies § 55.
[6, 8]  45 Am Jur, Religious Societies § 14.
[8, 10–12]  45 Am Jur, Religious Societies § 40.
[8, 10–13]  45 Am Jur, Religious Societies § 41.

standing the articles also purported to give control of the local church property to a majority of the membership of the congregation (CL 1948, § 450.181).

4. SAME—WITHDRAWAL OF MEMBERS—PROPERTY.
   Members of a church may withdraw from it, with or without reason, but upon leaving the organization they may not take with them or transfer to third persons the property dedicated to and conveyed for the religious association nor prevent its use by those who chose to remain in the church and who represent the church organization.

5. SAME—SECESSION—ADHERENTS TO DECLARATION OF FAITH.
   Adherents to the declaration of faith and recognized jurisdiction of a religious society are entitled to the possession, control and use of property for its declared purpose as against those seceding from the original organization.

6. SAME—CHURCH ORDER—ADHERENCE TO FAITH—COURTS.
   The church order of the Protestant Reformed Churches of America controls on questions of faith and of who adheres thereto and the synod is the supreme governing body of the denomination whose decision on questions of faith and adherence thereto is final and binding upon the courts.

7. SAME—PROTESTANT REFORMED CHURCHES OF AMERICA—SYNOD—
   MEETING.
   Meeting of synod of Protestant Reformed Churches of America at time and place to which preceding synodical meeting had adjourned constituted the true and lawful synod in meeting assembled.

8. SAME—SYNOD—ADHERENCE TO THE FAITH.
   The issue of adherence to the faith of the Protestant Reformed Churches of America is one for the determination of the synod, since the synod is the highest judicatory of the denomination.

9. SAME—ADHERENCE TO THE FAITH—EVIDENCE.
   Determination of trial court that appellees were the true adherents to the faith of the church involved, hence, entitled to its property, even though such determination was at variance with previous case involving same church factions of another church which was a member of the same denomination and classis *held*, proper, where countermanding action of the synod, a higher judicatory than the classis, was put in evidence in instant case and not the previous case.

10. SAME—ECCLESIASTICAL QUESTIONS—DETERMINATION BY SYNOD—COURTS.

The determination of an ecclesiastical question, who were the true adherents to the faith, by the highest judicatory of the denomination, the synod, is binding on the courts.

11. SAME—SYNOD—JURISDICTION—COURTS.

Whether or not the decision of a synod, the church denomination's highest judicatory as to ecclesiastical matters, was prudent or imprudent, right or wrong, is of no concern of the courts, the courts being concerned with the decision as made by a body having jurisdiction to make the decision.

12. SAME—COURTS—RELIGIOUS LIBERTY.

Civil courts will not enter into a consideration of church doctrine or church discipline nor the regularity of the proceedings of church tribunals having cognizance of such matters, since to do so would be inconsistent with complete and untrammeled religious liberty.

13. SAME—SYNOD—ADHERENTS TO THE FAITH—COURTS.

Action of synod of Protestant Reformed Churches of America, in determining that appellees were the adherents to the denomination, constituted a determination of the church binding upon the courts, since the synod was the body of that denomination having ultimate jurisdiction and power to make such determination.

Appeal from Kent; Searl (Fred N.), J. Submitted June 6, 1957. (Docket Nos. 34, 35, Calendar Nos. 47,186, 47,187.) Decided November 26, 1957.

Two separate actions by rival factional church groups, each instituted in the name of Second Protestant Reformed Church of Grand Rapids, a Michigan corporation, with each action naming individuals in the opposite group as parties defendant, to determine and establish rights to church property. Cases consolidated for trial and appeal. Decree in one case determining John Blankespoor faction entitled to ownership; decree in other case enjoining Marinus Schipper faction from publicly or privately claiming any interest therein or representing that they have

been deprived thereof. Marinus Schipper faction appeals. Affirmed.

*Tubbs & Grettenberger,* for appellants.

*Warner, Norcross & Judd* (*Harold S. Sawyer,* of counsel), for appellees.

DETHMERS, C. J. This case is a sequel to *First Protestant Reformed Church of Grand Rapids* v. *DeWolf,* 344 Mich 624, hereinafter called *First Case.* The doctrinal dispute there involved is at the root of this case. There we spoke of the so-called Hoeksema faction and DeWolf faction. The identical division and alignment exists here. For convenience, we shall refer to the Schipper group, affiliated with Reverend Hoeksema, and the Blankespoor group, kindred spirits with Reverend DeWolf. The question here is which of the two is entitled to possession and control of the real and personal property of the corporation known as Second Protestant Reformed Church of Grand Rapids, hereinafter called Second Church. Two cases are combined in the presentation of this appeal. In both, Second Church is named party plaintiff. In the one, it is the Schipper group and, in the other, the Blankespoor group, each purporting to act as Second Church, which brings suit as plaintiff against the minister and Consistory members of the opposing faction. Reverend Blankespoor and his Consistory members prevailed below and, hence, are here as appellees, while the appellants are those of the Schipper group.

Essential to decision is determination of the preliminary question whether the form of government of the denomination in question, the Protestant Reformed Churches of America, is congregational or presbyterian. In other words, is the decision of the majority of the members of Second Church or of its

local governing body, namely, its Consistory, on the one hand, or the decision of the majority of the highest governing body of the denomination which has passed on the controversy controlling with respect to the religious discipline to which the property shall continue to be dedicated. The trial court, in holding that the latter is controlling and, hence, that the form of government is presbyterial, relied on *First Case.* In that case the trial court had held to that same effect. In affirming on appeal, we said that the Church Order of this denomination is substantially the same as that of the Christian Reformed Church, under which, in *Borgman* v. *Bultema,* 213 Mich 684, we held the form of government of the latter to be presbyterial. Accordingly, in *First Case* we noted that the powers and functions of the several church judicatories of the Protestant Reformed Churches of America, the denomination here in question, were as set forth and explained in *Borgman* and in *Holwerda* v. *Hoeksema,* 232 Mich 648, with respect to the Christian Reformed Church. Appellees point to the provisions of articles fifth and sixth of Second Church's articles of association, which, in effect, purport to give control of its property to a majority of the membership of the congregation. In *Borgman* we held a similar provision in the articles of association was void as an attempt to establish a congregational form of government in a local church which was part of a denomination whose form was presbyterial. Appellees say, however, that Second Church was not incorporated under the special statute involved in *Borgman** but under the 1931 general corporation act, of which section 181 (CL 1948, § 450.-181 [Stat Ann § 21.182]) provides:

---

* PA 1901, No 148 (CL 1948, § 458.421 *et seq.* [Stat Ann § 21.1941 *et seq.*]), being an act to provide for incorporation of Christian Reformed Churches of America.

"Every such ecclesiastical corporation shall have authority to adopt bylaws prescribing * * * how far such corporation shall be subject to the approval or control of any other corporation or higher church body which corporation or body shall be named."

Appellees urge that this provision of the statute authorizes and validates the mentioned provisions of articles fifth and sixth of Second Church's articles of association. We do not agree. The quoted statutory provision authorizes bylaws prescribing how far the corporation shall be subject to the approval or control of a named higher church body. The fourth article of Second Church's articles of association does so prescribe by providing that:

"Fourth, The members of said church or society shall worship and labor together according to the discipline, rules and usage of the Protestant Reformed Church in the United States of America as from time to time authorized and declared by the Church Order of the Protestant Reformed Churches."

The combined effect of the provisions of section 181 of the statute and of the fourth article of association is to place this local church in the same relationship to the denomination and to its higher church bodies as was the case in *Borgman.* Consequently, as in *Borgman,* the provision in the articles of association for congregational control must be held to be inconsistent with the controlling Church Order of the denomination and, hence, void. The form of government of this denomination is presbyterial. Applicable, therefore, is the following, quoted in our opinion in *Borgman* (p 705), from *Fuchs* v. *Meisel,* 102 Mich 357, 373, 374 (32 LRA 92):

"In the freedom of conscience and the right to worship allowed in this country, the defendants and the members of this church undoubtedly possessed the

right to withdraw from it, with or without reason. But they could not take with them, for their own purposes, or transfer to any other religious body, the property dedicated to and conveyed for the worship of God under the discipline of this religious association; nor could they prevent its use by those who chose to remain in the church, and who represent the regular church organization. If complainants maintain the allegations of their bill,—that they represent the regularly organized body of the church, and are its regular appointees,—they are entitled to the relief prayed."

Also in point is the following from the syllabus in *Hanna* v. *Malick,* 223 Mich 100, quoted in *United Armenian Brethren Evangelical Church* v. *Kazanjian,* 322 Mich 651:

"Where the articles of incorporation and the by-laws of a local Orthodox Greek Church, as drafted and adopted by the original incorporators, who were natives of Syria, clearly express the intention to bring the church under the supreme authority and jurisdiction of the Patriarch of Antioch, those who adhere to that declaration of faith and recognized jurisdiction are entitled to the possession, control, and use of its property for its declared purpose as against those seceding from the original organization and seeking to divert its use and control to the jurisdiction of a Holy Russian Synod or patriarch."

In view of the above language of this Court, the next question presented is which of the contending parties here adheres to the declaration of faith and recognized jurisdiction of, remained in, and represents the regular organization of Protestant Reformed Churches of America to which the property was dedicated.

This controversy, as previously indicated, stems from doctrinal disagreement as to the content or interpretation of the denomination's confession of

faith and who are its true adherents. As held in *First Case,* the Church Order controls on questions of faith and of who adheres thereto and in that case, as in *Borgman,* we further held that Synod is the supreme governing body of the denomination and that its decision of questions of faith and adherence is final and binding upon the courts.

For an understanding of the problem before us, note should be taken of the organizational structure of the church and denomination in question. Having been delineated in *First Case, Borgman,* and *Holwerda,* we need not outline it in detail. Suffice it to say for our immediate purpose, the denomination has 24 churches or congregations, each composed of communicant members under the immediate governing of a local Consistory consisting of the minister and elders and deacons elected from and by the membership. The Consistory is in charge of the property of the local church. The next higher judicatory is a Classis, of which there are 2 in the denomination, namely Classis East and Classis West, with 12 churches belonging to each. Two delegates, a minister and an elder, are selected and sent by each Consistory to its particular Classis. Each of the 2 Classes selects and sends 8 delegates, 4 ministers and 4 elders, to the Synod, which is the highest judicatory of the denomination.

One of the articles of the Church Order provides that when an annual Synod closes it shall designate one of the churches as a calling church to issue a call, fixing time and place, for the meeting of the next Synod in the succeeding year. First Church was the calling church for the meeting of the 1953 Synod. The regular meeting of Synod was held in that church in June of 1953. At that time the mentioned doctrinal differences came to the fore. The 16 delegates of Synod were equally divided with respect thereto. The 8 delegates from Classis West supported the

DeWolf, or Blankespoor, view, and the 8 delegates from Classis East, to which the First and Second Churches of Grand Rapids resort or belong, supported the Hoeksema, or Schipper, view. Synod decided to refer the matter to a study committee which was to report back and make recommendations to an adjourned meeting of Synod. Synod voted to hold such adjourned meeting on the second Wednesday of March, 1954, in First Church of Grand Rapids. Synod then adjourned to said date.

A meeting of Classis East was held from October 6th to 9th, 1953. Theretofore the rift in First Church had occurred which was considered in *First Case.* In consequence, 2 sets of delegates came to that meeting of Classis East from First Church, one representing its original Consistory, loyal to DeWolf, and the other representing the so-called reorganized Consistory of First Church, adhering to Hoeksema. Classis seated the Hoeksema delegates. Defendant, Reverend John Blankespoor, minister of Second Church and a delegate to Classis East, together with 2 other minister-delegates, voted against seating the Hoeksema delegates. These 3 were then called upon by Classis East to state that they would abide by its decision in the premises or forfeit their rights to seats as delegates. They declined, reserving the right to appeal to Synod. Thereupon Classis East notified the Consistories of the churches served by these 3 ministers of what had occurred. On October 9, 1953, at a special meeting of the Consistory of Second Church, a motion was offered to support the action of Reverend Blankespoor in the Classis. The motion carried, receiving the affirmative vote of the 6 elders but the negative vote of the 2 deacons who comprised the Consistory. The 2 dissenting deacons thereupon withdrew from the Consistory meeting and called a meeting of the congregation for October 19, 1953. A minority group of the membership of

the congregation attended the meeting thus called and undertook to supplant the elders who had supported Reverend Blankespoor by selecting 4 new members to Consistory, who joined the 2 deacons and called themselves the reorganized Consistory. This group, representing a minority of the congregation, called the Reverend Marinus Schipper as their minister and, since then, they have held church services in a nearby building. The Blankespoor group in the original Consistory, representing the majority of the congregation, has continued in possession of the church property and changed the locks on the doors. On October 20, 1953, the new, reorganized Consistory elected 2 delegates to Classis East. On October 21, 1953, Classis seated them as delegates from Second Church in place of Blankespoor and his elder, whom it deemed to have forfeited their seats. There were similar occurrences in the churches of the other 2 ministers who had voted with Blankespoor at the meeting of Classis East against seating the Hoeksema delegates from First Church. Thereupon, DeWolf, Blankespoor, and the other 2 ministers mentioned, together with their adherents, created a so-called reconstituted Classis East, which, in competition with the original Classis East, elected delegates to Synod to serve in place of the original delegates from Classis East who adhered to Hoeksema.

The Schipper group contends that the action of Classis East, declaring Blankespoor's right to sit as a delegate in Classis forfeited and seating new delegates elected by the reorganized Consistory of Second Church, constituted a determination by Classis East that those in the Schipper group in Second Church are the true adherents to the denomination. They say that this action by Classis was the action of the highest judicatory in the denomination which passed on the question and that, hence, they

and their Consistory are entitled to the use and control of the property of Second Church.

The Blankespoor group, in answer to the above contentions, claims that there were subsequent actions of Synod, recognizing them as the true adherents of the denomination, and that, thus, they are entitled to the property. This requires redirecting our attention to the actions of Synod. In June, 1953, as hereinbefore noted, Synod had adjourned to the second Wednesday in March, 1954, and had voted to hold that adjourned meeting in First Church. The subsequent split in First Church had left its building and property in the hands of the DeWolf group. Consequently, the persons of the Hoeksema group who constituted the so-called reorganized Consistory of First Church, deeming themselves to be the calling church of the 1953 Synod, caused a notice to be published in one of the denomination's related publications that the adjourned sessions of Synod would resume on the second Wednesday of March, 1954, in the Fourth Protestant Reformed Church. At the appointed time, the 8 persons who had been delegates to the June, 1953, meeting of Synod from Classis West, together with one alternate delegate from the original Classis East, met in First Church as provided in the motion for adjournment adopted by Synod the previous June. At the same time, the eight persons who had been delegates to that Synod in June, 1953, from the Classis East, together with 1 alternate delegate from Classis West, met, as per the published notice, in Fourth Church. The Stated Clerk of Synod attended the First Church and the President of Synod the Fourth Church meeting. Inasmuch as Synod had a total authorized membership of 16, each of the synodical groups claimed to have a quorum, with 9 present, and proceeded with the business of Synod. Those meeting in First Church sent a communication to those meeting in Fourth Church,

inviting them to join in the meeting of Synod in First Church. No response thereto was made. The delegates selected by the so-called reconstituted Classis East of the DeWolf-Blankespoor group presented themselves at the Synod meeting in First Church, but, while favorably received, they were not seated on the ground that this was but an adjourned meeting of the Synod which had met in June, 1953, and that the delegates who then had been seated thereat were still the only lawful delegates to be seated at the adjourned meeting. This synodical meeting designated a calling church and adopted the authorization for selection of time and place for its 1954 successor Synod and thereupon adjourned. At the 1954 Synod so authorized by the group meeting in First Church, the DeWolf-Blankespoor delegates of the so-called reconstituted Classis East, including Reverend Blankespoor and his elder, Ondersma, were seated. That Synod and its successor Synods ever since have recognized the reconstituted Classis East and the Consistory members and congregations of the DeWolf-Blankespoor group as the true adherents to the denomination and, particularly, with respect to Second Church, have they so recognized Blankespoor, whom they elected President of the 1955 Synod, and his Consistory, which has selected and sent its delegates to the reconstituted Classis East. Each "Year Book", published as part of the acts of that succession of Synods, names Blankespoor as minister and defendant Ondersma as clerk of Second Church, and states that their church is a member of Classis East. Those books also list Blankespoor as a member of the classical committee of Classis East. On the other hand, the synodical group which met in March, 1954, in Fourth Church and its successor Synods from year to year have consistently recognized the Hoeksema-Schipper group in each of the churches, including

Second Church, as being the authentic group adhering to the Protestant Reformed denomination.

The issue of adherence being one for determination by Synod, the question is which was the true and lawful Synod. There is nothing in the Church Order, articles of association, or in any other rules or regulations limiting the power of Synod to adjourn to a specified time and place or providing that a call for such adjourned meeting either may or must be made by the Consistory of a calling church or by any other church, body or officer, or that any of them may change the time and place therefor as fixed by Synod. It follows that the lawfully fixed and official time and place for the adjourned meeting was that voted by Synod, namely, the second Wednesday of March, 1954, in First Church. Because it was not competent for any other person, church or body to change the place, the lawful meeting of Synod occurred on said date at First Church. The quorum of 9, composed of 8 delegates and 1 alternate, which gathered there that day constituted the true and lawful Synod in meeting assembled. *First Church of Christ Scientist* v. *Rentzel,* 242 Mich 120; *Krecker* v. *Shirey,* 163 Pa 534 (30 A 440, 29 LRA 476) ; *Schweiker* v. *Husser,* 146 Ill 399 (34 NE 1022) ; *Auracher* v. *Yerger,* 90 Iowa 558 (58 NW 893); *People, ex rel. Dubs,* v. *Esher,* 6 Ohio CC Rep 312; *State, ex rel. Kerr,* v. *Hicks,* 154 NC 265 (70 SE 468, 33 LRA NS 529); *Stone* v. *Bogue,* 238 Mo App 392 (181 SW2d 187). Therefore, it must be held that the Reverend Blankespoor and the members of his Consistory are the adherents to the denomination in question, as they have been recognized to be by the body herein held to be the true and lawful Synod, and that the Reverend Schipper and the members of his Consistory are not, for which reason the former and not the latter group is entitled to possession and control of the Second Church property.

Appellants insist that *First Case* is controlling here and stress that there the Hoeksema group, with which they are aligned, prevailed. It is to be noted that in that case no denominational action higher than that of Classis East, which upheld the Hoeksema group, was urged upon nor considered by this Court. In this case the subsequent and countermanding action of the higher judicatory, Synod, was put into evidence as it was not in *First Case.* It is on that basis that the court below made and we affirm its decision herein, even though it be at variance with the result in *First Case.*

Seeking to obviate the controlling effect of the actions of Synod above considered, appellants urge that procedures prescribed by the Church Order for taking appeals from Classis to Synod were not followed by Reverend Blankespoor nor by his Consistory and that, hence, they had no right of appeal; that, as a matter of fact, neither the adjourned meeting of Synod in First Church nor any of its successor Synods considered any such appeal or directly acted upon or reversed the action of Classis East in unseating Blankespoor and his elder, Ondersma, as delegates thereto; that his subsequent acceptance as a delegate to Synod was merely as an individual and that this was not conclusive of the question of which is the true Consistory of Second Church because Synod is not composed of delegates from churches or Consistories, but only from Classes; that the reconstituted Classis East of the Blankespoor group was rump and not lawfully created under the Church Order; and, finally, that the original Classis East is the highest judicatory which has passed, (1) on the right of Blankespoor and Ondersma to represent Second Church in Classis East and, (2) on the authority of the reorganized Consistory of Second Church to take over and to elect new delegates to that Classis in their places. To all of this we say that

the question to be determined by this Court is not the propriety of the action of Classis East in unseating Blankespoor and Ondersma as delegates and seating others in their places, nor whether a proper appeal was taken therefrom, nor whether Synod had jurisdiction to and did reverse such action, nor whether the reconstituted Classis East could, under the Church Order, be brought into valid existence in the manner employed by the Blankespoor group. Rather, the question to be decided by us is which Consistory, with the congregation it represents, is entitled to possession and control of the property of Second Church. This, in turn, depends on which is composed of those who are the true adherents to the denomination. Determination of that ecclesiastical question was properly a matter for Synod and was, by its actions above noted, made by the successive bodies which we have held to be the true and lawful succession of Synods. We are bound thereby. As for the propriety of the methods of the successive Synods' expression of such determination, its correctness under the Church Order, or the regularity of proceedings in connection therewith we quote, as applicable, the following:

"Whether the decision of the classis, excluding defendants, was prudent or imprudent, right or wrong, we have no right to inquire. Nor will we undertake to determine whether the decision was in accordance with the canon law of the church, except insofar as it may be necessary to do so in determining whether the classis had jurisdiction of the matter, whether the act is that of the society itself." *Holwerda* v. *Hoeksema,* 232 Mich 648, 652.

"The supreme governing body of the First Reformed Church is the synod. This supreme body has sole and exclusive power to make and establish all laws and regulations for the government of the church. It has supreme ecclesiastical power over all

those who adhere to that confession of faith. It is the only body in the church which can say what the confession of faith is or shall be." *Borgman* v. *Bultema,* 213 Mich 684, 689, 690.

"Civil courts will not enter into a consideration of church doctrine or church discipline nor will they inquire into the regularity of the proceedings of church tribunals having cognizance of such matters. To do so would be inconsistent with complete and untrammeled religious liberty." *Van Vliet* v. *Vander Naald,* 290 Mich 365, 370, 371.

"Neither will the court as a civil tribunal undertake to determine whether the resolution directing exclusion was passed in accordance with the canon law of the church, except insofar as it may be necessary to do so in determining whether it was, in fact, the church that acted." Quoted in *Borgman* v. *Bultema,* 213 Mich 684, from *Morris Street Baptist Church* v. *Dart,* 67 SC 338 (45 SE 753, 100 Am St Rep 727).

We hold that Synod was the body which had the ultimate jurisdiction and power to determine the question of adherence to the denomination; that it made such determination in favor of the Blankespoor group; that we will not look into the regularity of the proceedings by which that power was exercised; and that when the Synod so determined this ecclesiastical question it was the church that acted and we are bound thereby.

Inasmuch as the decrees below are consonant with this opinion, they are affirmed, with costs to the prevailing parties.

SHARPE, SMITH, EDWARDS, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.