IMMANUEL EVANGELICAL LUTHERAN CHURCH *v.* FROMM.

1. RELIGIOUS SOCIETIES—INDIVIDUAL'S RIGHT TO WORSHIP—COURTS.

   A court may not interfere with an individual's free exercise of his right to worship as he wishes and in determining the right to possession of the tangible property of a church does not interfere with anyone's right to withdraw from such church and worship as he sees fit (US Const, Am 1).

2. SAME—PRESBYTERIAN GOVERNMENT—MERGER—CONGREGATION.

   A church with a presbyterian form of government may merge with another church through affirmative action taken by the body to which delegates have been sent by the church, since a congregation under such a government is without power to effect the merger.

3. SAME — PRESBYTERIAN GOVERNMENT — AMENDMENT OF LOCAL CHURCH CONSTITUTION—SEVERANCE OF PROPERTY.

   An amendment of the constitution of a local church with a presbyterian form of government, which would permit such local church to sever its connection with its controlling body

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 11 Am Jur, Constitutional Law § 312.
   45 Am Jur, Religious Societies § 59.
[2] 45 Am Jur, Religious Societies § 78.
[3, 5] 45 Am Jur, Religious Societies § 12.
[4] 45 Am Jur, Religious Societies § 41.
[6] 45 Am Jur, Religious Societies § 61.

to which it had elected delegates, without the consent of the controlling body, is void and ineffective to transfer property away from the church to which it had been dedicated and which had been using it for 22 years.

4. SAME—COURTS—GOVERNING BODY—JURISDICTION.

A court will not interfere with the action taken by the governing body of a church except to determine whether the governing body had jurisdiction to do what it did.

5. SAME—CHANGE OF CREED.

A church incorporated for the promotion of a defined fundamental religious faith or doctrine cannot by amendment change its religious creed or faith except by unanimous vote of its members.

6. SAME—PROPERTY HELD IN TRUST—COURTS—DIVERSION OF PROPERTY.

The property of a church is impressed with a trust to carry out the purposes of its organization; and a court though not concerned with religious doctrines, will not permit a violation of the trust by a diversion of the property to other uses sought to be made of it, because of a change in faith of the majority.

7. SAME—DAMAGES.

No award of monetary damages is made in suit to determine the right to the possession of church property, where, although defendants' acts are declared illegal, they have conducted services which have been attended by adherents to the faith to which the property had been dedicated and any damages would be a highly speculative matter.

Appeal from Saginaw; Beers (Henry L.), J., presiding. Submitted April 10, 1962. (Docket No. 53, Calendar No. 48,782.) Decided September 10, 1962.

Bill by Immanuel Evangelical Lutheran Church, of Saginaw, Michigan, a Michigan corporation, David Yauck and others against Alex Fromm, Jr., Daniel Mathes, Norman A. Mentor, and others to establish right to church property. Decree for plaintiffs. Defendants appeal. Affirmed.

*Albert A. Smith* and *Albert C. Reinert,* for plaintiffs.

*Curry & Curry* and *Martin & Martin,* for defendants.

KAVANAGH, J.  This case involves the right to use and possession of church property of Immanuel Evangelical Lutheran Church of Saginaw, Michigan. The property consists of the church building, 2 residences, and cash assets.

A bill of complaint was filed on June 22, 1959, by 6 individuals in their own names and in the name of Immanuel Evangelical Lutheran' Church in its corporate capacity, asking that they be awarded possession of church property, injunctive relief, and monetary damages.  The suit was commenced against 10 named defendants.  Eight of the named defendants were elected officers of Immanuel Evangelical Lutheran Church.  The other 2 defendants were Reverend Daniel Mathes, appointed pastor by defendant group, and Dr. Norman A. Mentor, president of the Michigan District of the American Lutheran Church.

Plaintiffs aver in their bill of complaint that Immanuel Evangelical Lutheran Church is a religious corporation organized under the laws of the State of Michigan; that the incorporators adopted the discipline, rules, and usages of the German Evangelical Synod of North America; and that the corporation and congregation have been so governed continuously by the Evangelical and Reformed Church, with which the Synod affiliated in 1934.  They further aver that this church was founded as a mission church and that plaintiffs are members of Immanuel Church who remain steadfast and loyal to the discipline, rules, and usages of the German Evangelical Synod of North America and its continuing body of

the Evangelical and Reformed Church, Michigan-Indiana Synod.

Plaintiffs further represent that defendants have conspired together to withdraw the congregation and its physical assets from the Evangelical and Reformed Church and affiliate with the American Lutheran Church. They state this conduct by defendants was begun without any official action by the church council of the Immanuel Evangelical Lutheran Church of Saginaw, Michigan, or the congregation, and without notice to any officer of the Michigan-Indiana Synod of the Evangelical and Reformed Church.

Plaintiffs further allege that an application for withdrawal was presented to the annual conference of the Michigan-Indiana Synod of the Evangelical and Reformed Church, which on May 7, 1958, passed a resolution that the congregation consists of those who remain faithful to the Evangelical and Reformed Church and that such faithful members retain all rights, title, and possession to the assets of the congregation.

Plaintiffs further aver that pastor Daniel Mathes has occupied the pulpit and parsonage since April 26, 1959, and preaches the doctrine of the American Lutheran Church, which is contrary to the German Evangelical Synod of North America and its continuing body, the Evangelical and Reformed Church. Plaintiffs aver that defendants have excluded the individual plaintiffs from entering the church property since early in 1958. Plaintiffs prayed for a temporary injunction, which the lower court did not grant.

Defendants allege in division 1 of their answer that the church as a Michigan corporation is governed in accordance with its constitution and bylaws by its officers and directors, and that the duly elected and qualified officers and directors of said corpo-

ration are several of the defendants.   Defendants further aver in their answer that none of the officers and directors ever authorized commencement of this suit, and that the plaintiffs who instituted the suit did so unlawfully and without any color of right or authority.

In division 2 of their answer, defendants admit that after incorporation the church adopted the discipline, rules and usages of the German Evangelical Synod of North America.   They deny the incorporators worshiped as a "Reformed Church" or that the corporation and congregation have been governed by the discipline, rules and usages of the Evangelical and Reformed Church.   They deny the church was founded as a mission church.   They deny the church or its congregation is affiliated with the American Lutheran Church.   They deny application for withdrawal from synod membership was made in the sense pleaded by plaintiffs.   Defendants aver the church is in full control and possession of all its real and personal property and deny they have illegally seized and taken possession and control of the property owned by the church.   They aver that they are the lawful officers and directors of the church and that they have performed all their duties.   They deny they are disloyal members of the church and that there has been any departure from church doctrine since April 26, 1959, and aver that the doctrine preached in the Immanuel Evangelical Lutheran Church is exactly the same doctrine which has been preached in that church since it was organized in 1924.   Defendants aver that doctrine is not contrary to the doctrine of the German Evangelical Synod of North America.   They deny plaintiffs have been excluded from entering upon church property and aver plaintiffs are welcome to attend church services and are at liberty to take part in church functions.

After a lengthy trial of the case in the Saginaw county circuit court, in chancery, the court entered a decree in favor of plaintiffs and found that plaintiff Immanuel Church has a representative or presbyterian form of government; that plaintiff church corporation is subject to the discipline, rules and usages of the Evangelical and Reformed Church, and specifically the Michigan-Indiana Synod. The decree further held that the right to possession of all the real and personal property of the church is in the plaintiff corporation and those members adhering to the discipline, rules and usages of the Evangelical and Reformed Church, and those officers of said corporation elected under the supervision of the president of the Michigan-Indiana Synod on October 6, 1958, or their duly elected or appointed successors in office.

The decree commanded the defendants to desist and refrain from representing that they are the legal officers of the corporation and ordered them to forthwith account and turn over to the duly constituted officers and directors of plaintiff corporation all the real and personal property together with all records, moneys, books, bank accounts and bonds which they hold or control or have collected in the name of the Immanuel Evangelical Lutheran Church of Saginaw, Michigan.

Defendants have taken a general appeal from the decree of the trial court raising the following questions:

The first question raised is: Should defendants' written motion to dismiss have been granted? This motion was based on 3 propositions:

1. That the grievance procedure provided under the constitution of Immanuel Church had not been exhausted by plaintiffs or the church prior to instituting this action in civil court.

2. That a civil court cannot interfere with the constitutional rights, State and Federal, involving freedom of worship.

3. That the church corporation is not a proper party plaintiff, not having been authorized by defendants, who claim to be the proper officers, to join in instituting the action.

The second question raised is: Did the congregation of Immanuel Church forfeit its rights to its own church properties by legally amending its local constitution terminating membership in the Synod?

The third question raised is: Under the corporate charter of Immanuel Church, are the plaintiffs entitled to the control and possession of the local church property in affiliation with the United Church of Christ?

The trial judge in a very exhaustive opinion made a number of findings of fact, which an examination of the record discloses are amply supported by the evidence presented in the case. We think he ably applied the law to the facts in this case. We do not think we could state the issues involved and the authorities determining them any better than did the trial judge. We, therefore, adopt the trial judge's opinion as the opinion of this Court:

"In considering this case, it is well to bear in mind the provision of article 1 of [amendments to] the Constitution of the United States:

" 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'

"Following this fundamental law of the land, the courts have always zealously guarded the right of the individual to worship as he wishes. There is no question in this case but that any of the parties hereto may withdraw from the plaintiff church and worship in any manner they see fit. The only question the court deals with here is the right to the

possession of the tangible property of the church. No question of religious belief is here involved.

"The Immanuel Evangelical Lutheran Church of Saginaw was organized and incorporated as a church in 1924. The incorporators filed articles of association in accordance with the Michigan law on April 29, 1924. The fourth article reads:

" 'Fourth, The members of said church or society shall worship and labor together according to the discipline, rules and usages of the German Evangelical Synod of North America  * * *  as from time to time authorized and declared by the General Conference of said church.'

"The article 6, section 2, of the constitution of the German Evangelical Synod of North America provides:

" 'Section 2. Form of government. The government of the Evangelical Synod of N. A. shall be representative, and shall be vested in the following branches: legislative, executive, and judicial.'

"The church continued as a member of the German Evangelical Synod of North America until the year of 1934, when the German Evangelical Synod of North America merged with the so-called Reformed Church to form the Evangelical and Reformed Church. The constitution of the Evangelical and Reformed Church provides that the government shall be legislative, administrative, and judicial. The Immanuel Lutheran Church continued following the merger as a member of the Evangelical and Reformed Church up to and including the time of trial of this case.

"This case consumed the better part of 5 weeks of trial, many questions were raised and argued, the court admitting a wide range of testimony in order that both sides might fully present their respective claims. Much of the testimony taken, in my opinion, is immaterial to the decision of this case as are many of the legal questions raised by counsel. To avoid making this opinion unduly prolix, I will not mention

those questions which I do not deem necessary to this decision.

"The church has an interesting history which I will not detail except to say that this church stems from the organizing of a church in Russia during the reign of Queen Catherine the Great about 1764. These people had immigrated into the Volga valley from Germany. Because of necessity, one minister frequently served what we know as the Calvinist and also the Reformed faiths. Late in the 1870's, the government of Russia commenced conscription of these people into the Russian army, and many of them left Russia and settled in other parts of the world. Many went to South America and a great many came to the United States. This emigration continued over a considerable period of years, and a number of these people became residents of the Saginaw area. In the early days they had no church of their own and apparently attended various churches until in 1924 a group of the Volga German people organized for the purpose of forming a church of the same type and character as they had formerly attended in Russia. This organization culminated in the organization of Immanuel Lutheran Church; the incorporation thereof and adoption of articles of association, bylaws, and so forth, as I have previously stated, in the year 1924. The church prospered and continued, as I have said, under the government of the German Evangelical Synod of North America and subsequently the Evangelical and Reformed Church until about the year 1958. The minister of this church, the Rev. Eichhorn, was a Volga German. He came to this country about the year 1924, became pastor, and continued as pastor of this church until the year 1958 when he tendered his resignation and retired under a retirement plan or pension paid to him by the Evangelical and Reformed Church. During the entire period I have mentioned, it is not disputed that the church body conducted themselves under the discipline and usages of the 2 respective synods.

"The organization of the Evangelical and Reformed Church, of which Immanuel Lutheran Church is a member, consists of a general synod at its head, 33 intermediate synods named upon a geographical basis throughout the country, and 2,700 congregations comprising 800,000 members. We are here concerned with the synod known as the Michigan-Indiana Synod. The 2,700 congregations elect delegates to the intermediate synod who in turn name the delegates to the general or supreme synod. It is thus demonstrated without question we have here a representative form of church government commonly called presbyterian, being in nature the same as our representative State government as contradistinguished from the pure democratic or congregational form of church government. Throughout the years the congregation of Immanuel Lutheran Church elected its representatives to represent the church in the governing body of the Michigan-Indiana Synod, which representatives in turn elected representatives to the general synodical council.

"Following the resignation of the Rev. Eichhorn, a dispute arose among the members of the church as to acquiring a minister to take his place. This dispute stems from a proposed merger of the Evangelical and Reformed Church with other churches, which merger has not as yet taken place but is in the process of accomplishment. Following the resignation, a majority of the church members voted to bring into the church a minister of an entirely different denomination, not of the Evangelical and Reformed Church.

"Meetings were held by the church body which I will not detail, votes were taken, and resolutions adopted in which by the orderly process of representative government delegates were elected to attend the synodical meetings and instructed to attempt to gain permission from the synod for the church to withdraw from the Evangelical and Reformed organization, take the church property, and affiliate with another church. At all times there was a minority

of members of the congregation who opposed this move. Representatives of the church did attend the synodical meetings, proposed resolutions, and were unsuccessful in gaining the permission of the synod so to do.

"At a meeting of the congregation held on November 24, 1957, the following question was proposed and voted upon:

" 'Should the church council take necessary steps to sever all [our] relationship with the Evangelical and Reformed Church as of the end of the year and seek Lutheran synodical affiliation?'

"A majority of the members voted in favor of this proposal, a minority voted against it. As I have previously stated, efforts were continuously made by the representatives of the church body to gain permission of the synod to withdraw.

"On May 5, 1959, at the twenty-first annual conference of the Michigan-Indiana Synod, we find the following in the minutes of that meeting:

" 'Rev. Jack E. Yates presided and called upon the resolutions committee to present the resolution concerning the request of the Immanuel Evangelical Lutheran Church of Saginaw, Michigan. After due discussion, a motion was made and seconded that the representatives of the dissident group be given the privilege to address synod. Mr. Harold Martin spoke in their behalf. A standing vote was then called for and the resolution was unanimously adopted.'

"The resolution referred to is a resolution adopted by the synod refusing the application of the Immanuel Church's representatives to withdraw. That resolution, so far as material here, reads:

" 'Whereas, Michigan-Indiana Synod of the Evangelical and Reformed Church (hereinafter referred to as synod) in regular annual session at Taylor, Michigan, on May 6 and 7, 1958, officially acted upon the application of a group of members of Immanuel Evangelical Lutheran Church of Saginaw, Michigan, (hereinafter referred to as Immanuel Church) to

withdraw that congregation from the Evangelical and Reformed Church; and

" 'Whereas, synod adopted a resolution as set forth in the official minutes of said session, which resolution is incorporated herein by reference; and'

"Following this unsuccessful effort to withdraw the congregation from the Evangelical and Reformed Church, the facts disclose that the majority then called a pastor not of the Evangelical and Reformed Church, and proceeded thereafter upon the theory that this church has a congregation government and is not one of a presbyterian nature. Shortly thereafter this suit was commenced by Immanuel Lutheran Church, a Michigan corporation, as one plaintiff, together with other members of the congregation who were continuing under that name and who did not wish to withdraw the church from the Evangelical and Reformed control. At certain meetings the president of the Michigan-Indiana Synod, acting under his power of president, convened the members who wished to remain with the congregation and officers were elected and the church authorized to proceed in this litigation. The other members of the church, being in the majority and having acquired a pastor of another denomination, took over the operation of the church property, no longer recognized the Evangelical and Reformed Synod as its governing authority, and proceeded with what is apparently the plan, as stated in the aforesaid question voted upon, to seek other synodical affiliation.

"Defendants earnestly contend that the plaintiff church has a congregational form of government. In support of this argument, their claim is that this congregation never ratified the merger heretofore referred to between the German Evangelical Synod of North America and the Evangelical and Reformed Church. The fallacy in this argument is apparent. At the time of the merger between the 2 aforesaid denominations, this congregation had a presbyterian form of government and it was, therefore, not necessary that it ratify such a merger; in fact, it had no

power to do so.  A second very forcible reason for my not being able to so hold is that the records of the church's activities refute this contention.   Even though there is no written ratification of this merger, the congregation of this church has proceeded under the jurisdiction of the Evangelical and Reformed Church for a period of more than 22 years and has at all times contributed money to and conducted its business as a part of that church organization. From the time of this church's inception, it has recognized the authority of the synod.  Its constitution, article 11, provides:

"All properties of the congregation are and shall remain in the undivided possession of the congregation.  In case of a division (in the congregation) the judgment of the Evangelical Synod of North America in regard to the right of possession shall be obtained and recognized as final.

"On 1 occasion a dispute arose over the use of the church as property by the so-called brotherhoods. The officers called upon the synod and the synod resolved the dispute.

"Apparently recognizing the proposition that some change would have to be made in the basic rules governing this church in order to accomplish their purpose, the defendants attempted to amend article 7 of the local constitution by deleting that article from the constitution.   Article 7 reads as follows:

" '1. The congregation shall be a member of the Evangelical Synod of the North America and accept the duties and rights as a member of this church body as stipulated in its constitution.

" '2. Only pastors affiliated with the Evangelical Synod of North America shall be permitted to become members of this church.'

"A similar effort was made in the case of *Borgman* v. *Bultema,* 213 Mich 684.  In that case the majority of the congregation attempted as here to amend the church's constitution so as to permit a majority of the congregation to change the church's form of gov-

ernment. The Court summarily dealt with that attempt as follows, quoting on page 705 of the opinion:

" 'The amendment attempted is void. It is an effort to set up in this church of presbyterial form of government a congregational form of government. What was said in *Fuchs* v. *Meisel,* 102 Mich 357, 373 (32 LRA 92), is applicable:

" ' "In the freedom of conscience and the right to worship allowed in this country, the defendants and the members of this church undoubtedly possessed the right to withdraw from it, with or without reason. But they could not take with them, for their own purposes, or transfer to any other religious body, the property dedicated to and conveyed for the worship of God under the discipline of this religious association; nor could they prevent its use by those who choose to remain in the church, and who represent the regular church organization." '

"This after the fact attempt by amendment of the church's constitution to withdraw the property of the church from the control of its governing body is void as stated in the *Bultema Case.* The action itself, however, does serve to demonstrate the fact that the members of this church have definitely recognized their position as being under the control of the synod.

\* \* \*

"Again referring to the *Bultema Case,* the case of *Holwerda* v. *Hoeksema,* 232 Mich 648, is referred to. There the governing body of the church is known as the classis, and in speaking of the action of the governing body the Court said at page 652:

" 'Whether the decision of the classis, excluding defendants, was prudent or imprudent, right or wrong, we have no right to inquire. Nor will we undertake to determine whether the decision was in accordance with the canon law of the church, except insofar as it may be necessary to do so in determining whether the classis had jurisdiction of the matter, whether the act is that of the society itself.' Citing *Borgman* v. *Bultema,* 213 Mich 684.

"All of the cases I have examined, at least those that follow the great weight of authority in this country which the Michigan Court has always followed, demonstrate that where the determination has been made that the church is one of a representative form of government the Court will not interfere in any manner with the decisions of the governing body except to determine whether the governing body had jurisdiction to do what it did. The rule followed by the Michigan Court and by most of the courts of this country is concisely stated in the footnote found in 70 ALR 75, at page 85:

" 'A church incorporated for the promotion of a defined fundamental religious faith or doctrine cannot by amendment change its religious creed or faith except by unanimous vote of its members; its property is impressed with a trust to carry out the purposes of its organization; the court, though not concerned with religious doctrines, will not permit a violation of the trust by a diversion of the property to other uses sought to be made of it, because of a change in faith of the majority. *Mattson* v. *Saastamoinen* (1926), 168 Minn 178 (209 NW 648).'

"There are cases, as cited in defendants' brief, which would seem to vacillate somewhat upon the proposition that a majority of a church congregation may withdraw church property from control of a governing body. These, however, are exceptions and are by no means the rule.

"As I have previously stated, there is no question of the right of these defendants to join any church they want to, but in so doing they may not take the church property with them. In other words, the defendants may not violate the trust impressed upon this church's property by its original organizers.

"One other question remains to be decided. In the prayer for relief the plaintiffs seek monetary damages against the defendants by reason of their occupancy of the church property. While the holding of the court is that the actions of the defendants in this case have been illegal, it appears that the

church was continued under the pastorate of a minister of another church and that many of the congregation although retaining allegiance to the Evangelical and Reformed Church nevertheless made use of the church property in attendance at church services. The award of damages would be an extremely difficult matter and in my opinion would be highly speculative. For that reason I do not see fit to award monetary damages in this case.

"A decree may be prepared granting the prayer of the bill of complaint and an injunction issued restraining the defendants as therein prayed. The plaintiffs will recover costs."

In view of the above disposition of the factual and legal matters involved in the case, the other questions raised by defendants on appeal need no further answer.

The decree of the trial court is affirmed. Plaintiffs shall have costs.

CARR, C. J., and DETHMERS, KELLY, BLACK, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.