850 F.2d 692
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Reverend Vasil KENDYSH, et al., Plaintiffs-Appellees,
v.
HOLY SPIRIT BYELORUSSION AUTOCEPHALIC ORTHODOX CHURCH,
Defendants-Appellants.
 No. 87-1637.
 United States Court of Appeals, Sixth Circuit.
 July 6, 1988.
 
 Before KEITH and WELLFORD, Circuit Judges and ODELL HORTON,* District Judge.
 PER CURIAM:
 
 
 1
 This appeal presents difficult questions raised by a dispute within a hierarchical church over the ownership of church property. The central administrative adjudicatory of the Byelorussian Autocephalic Orthodox Church ("the BAOC") sued to gain control over church property held by a seceding local parish in Michigan, the Holy Spirit Church. The district court entered judgment for the plaintiff central church. We affirm based essentially on the analysis contained in the district court's extensive memorandum opinion.
 
 
 2
 Plaintiff Reverend Vasil Kendysh is Secretary of the Consistory of the BAOC, a self-governing church adhering to the tenets, cannons, doctrine and traditions of the Holy Ecumenical Apostolic Orthodox Church. In form the BOAC has a hierarchical polity with a multitier system of judicatories, of which the chief ecclesiastical judicatory is the Council of Bishops. See Presbyterian Church v. Hull Church, 393 U.S. 440 (1969), for a discussion and definition of a "hierarchical church." The Consistory is an intermediate administrative ecclesiastical judicatory with authority to supervise parishes, to intercede on behalf of the interests of the denomination, and to assume control over and title to any parish property in the event of secession or schism by a parish.
 
 
 3
 The defendant Holy Spirit Church, which was organized as an ecclesiastical corporation under Michigan law in 1971, was a parish of the BAOC during the time leading up to the dispute which is the subject matter of this suit. The organizers of the Holy Spirit Church bought a church building in 1971 with money raised through member contributions. The title to the church building and the rectory subsequently purchased by the Church is in the name of the Holy Spirit Church.
 
 
 4
 In 1972 the BAOC held a General Convention in New Jersey. Two parishoners of the Holy Spirit Church attended the convention. At the convention, the gathered delegates voted to adopt, in principle, the draft form of a new constitution for the BAOC, referred to as "the Statute." It was anticipated that after revisions of the document were completed a referendum would be held for final ratification of the Statute. Instead, the final version of the Statute, when completed, was sent to parishes of the BAOC prior to January 1, 1976, on which date, according to its own terms, the Statute was effectively promulgated and in force. No referendum was conducted, but none of the parishes voiced any objections to the final version of the Statute. The Statute provides that upon its enactment "all local statutes of Parishes and Dioceses are cancelled and lose their validity."
 
 
 5
 During the 1970s the Holy Spirity Church conducted itself as a parish of the BAOC by, for example, making dues payments and administrative reports to the Consistory, and the Church's Bylaws recognized the authority of the BAOC with regard to several matters, including the appointment of priests and the liquidation of the parish. While these factors demonstrate that the Holy Spirit Church submitted itself to the hierarchy of the BAOC, the Bylaws of the Church contained provisions indicating an inconsistent intent to retain control over the Church's property in the hands of the local church. By contrast, the Statute of the BAOC provides that in the event of liquidation of a parish, which can occur only with the consent and order of the Consistory, "... any and all property that has been under the authority of said ... Parish, automatically comes under the direct authority of the Consistory as property of the BAOC."
 
 
 6
 The discontent of the Holy Spirit Church with the BAOC hierarchy apparently originated in 1978, when the BAOC, which previously had functioned as one diocese, split into the American and Canadian dioceses. As a result of this division, the Holy Spirit Church fell under the authority of the Primate[1] Andrew, who became the governing bishop of the American diocese. In October 1980, the Holy Spirit Church requested Archbishop Mikalay, the governing bishop of the Canadian diocese, to take the parish under his control, which he did. In September 1981, the Holy Spirit Church effectively announced its renunciation of the BAOC's hierarchy by sending a declaration to the Primate stating that it did not consider itself bound by decisions of the Council of Bishops and that instead the parish considered Mikalay its spiritual and administrative leader.
 
 
 7
 Following this schism, Reverend Kendysh brought suit in district court against the Holy Spirit Church, asserting that the property held by the Holy Spirit Church was in fact the property of the BAOC pursuant to the Statute. Following a bench trial, the district court entered an order enjoining the Holy Spirit Church from transferring the property in question and ordering the Church to assign the property, including a bank account, to Kendysh in his official capacity.
 
 
 8
 In its memorandum opinion, the district court carefully and thoroughly detailed its factual findings and conclusions of law in the case. The court addressed itself to two primary issues: (1) whether the Statute of the BAOC was valid and binding, and (2) if so, whether the Holy Spirit Church was a part of the BAOC hierarchy prior to the 1980 schism and thus was bound by the Statute's property control provisions. The district court resolved both of these issues in the affirmative, and in favor of plaintiffs.
 
 
 9
 The district court based its conclusion that the Statute of the BAOC should be deemed or presumed valid on the Supreme Court's reasoning in Serbian Orthodox Diocese v. Milivojevich, 426 U.S. 696 (1976), which held that a civil court must defer to the decisions of the ecclesiastical tribunals of a hierarchical church on matters of church polity and administration. We believe, as the district court found, that to attempt to adjudge the validity of a religious organization's self-proclaimed constitution would thrust the court into the midst of a dispute regarding church polity and administration. Serbian Orthodox Diocese teaches that we should avoid just such a result. See 426 U.S. at 710. We therefore find that the district court's deference to the BAOC's assertion of the Statute's validity was proper for the reasons articulated at length by the district court.
 
 
 10
 After concluding that the Statute was presumptively valid, the district court proceeded to determine that a preponderance of the evidence showed that the Holy Spirit Church was part of the BAOC hierarchy prior to the 1980 schism. We believe that the evidence of record and the Michigan precedent considered by the district court support the court's conclusion in this regard. We find no error in the findings of fact made in this respect. Having found that the Holy Spirit Church was part of the BAOC hierarchy and therefore bound by the terms of the Statute, the district court applied the "neutral principles of law" approach to settling church property disputes and concluded that the provisions of the Statute vesting all parish property in the BAOC were controlling. Since the district court's opinion reflects a well-considered and proper application of Supreme Court precedent establishing the neutral principles of law approach as an appropriate means of ensuring that church property disputes be settled pursuant to the objectively expressed intent of the church membership, we affirm that decision. See Jones v. Wolf, 443 U.S. 595 (1979); Presbyterian Church v. Hull Church, 393 U.S. 440 (1969). Although the Holy Spirit Church argues that its Bylaws, enacted in 1971, reflect its intent to retain autonomous control over its property, the Church has provided no evidence that, at or following the time of the Statute's enactment, it ever expressed the intent that it should not be bound by the Statute's property provisions, or that it opposed the Statute's application to local churches and their property. As the district court noted, once a local parish submits itself to the authority of a central hierarchical church, provisions in the central church's constitution override inconsistent provisions in the local church's articles of association. See Second Protestant Reformed Church v. Blankespoor, 350 Mich. 347, 86 N.W.2d 301 (1957).
 
 
 11
 In sum, for the reasons articulated by the district court's opinion, and for the reasons herein summarized, we conclude that the district court's decision that the BAOC owned the parish property has not been demonstrated to be erroneous. Accordingly, we affirm the district court's judgment for plaintiff Kendysh.
 
 
 
 *
 The Honorable Odell Horton, Chief United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 The Primate is the elected head of the BAOC, a position analogous to that of the Pope in the Roman Catholic Church